SMITH, Appellee,

v.

WUNSCH, Appellant.

</div>

[Cite as *Smith v. Wunsch,* 162 Ohio App.3d 21, 2005-Ohio-3498.]

<div align="center">

Court of Appeals of Ohio,
Fourth District, Hocking County.

No. 04CA14.

Decided June 28, 2005.

</div>

22

Michael N. Oser, for appellant.

**24**

ABELE, Presiding Judge.

{¶ 1} This is an appeal from a Hocking County Common Pleas Court civil stalking protection order ("CSPO") directing Ronny E. Wunsch, respondent below and appellant herein, to refrain from harassing, contacting, or coming within 500 yards of Rachel Smith, petitioner below and appellee herein, and her husband Michael J. Smith.

{¶ 2} The following errors are assigned for our review:

### FIRST ASSIGNMENT OF ERROR:

"The trial court erred when it granted petitioner-appellee's request for a stalking civil protection order."

### SECOND ASSIGNMENT OF ERROR:

"The trial court abused its discretion in granting petitioner-appellee's request for a stalking civil protection order because the evidence failed to support a finding that Mr. Wunsch caused petitioner-appellee mental distress."

{¶ 3} Appellant served as Circleville Mayor from 2000 to 2003. In 2001, appellee worked as a typist/clerk in the Circleville City Services Department. During their employment with the city, they had daily contact that allegedly involved appellant's touching appellee's shoulder, whispering in her ear, and making her feel uncomfortable.

{¶ 4} Appellant left office in December 2003, but he and appellee had contact for several months thereafter. On May 28, 2004, appellee commenced the instant action and alleged that appellant persistently harassed her by (1) visiting her at work, (2) driving past her going to and from work, (3) sending e-mails, and (4) making phone calls. Appellee requested a CSPO to direct appellant to cease contacting, harassing, bothering, and annoying her and her husband.

{¶ 5} At the July 23, 2004 hearing, appellee related that appellant had continued to come and see her at work after he left office. She further recounted that appellant had visited her office on numerous occasions and asked her to be his friend, that he had managed to drive by her in the morning on her way to work and then again on her way home,[1] that he had waited in the afternoon for her outside her place of employment, and that he had followed her around town. In addition, appellee recounted two specific instances when this unwanted attention and contact caused her particular concern: (1) when she spotted appellant hiding in the bushes outside her office waiting for her to leave work and (2) when

---

1. Appellee and her husband live in Hocking County. Thus, it takes considerably more effort to pass her while she drives to and from work than if she lived in Circleville.

appellant followed her to a Dairy Queen in Circleville and blocked her car from leaving while he attempted to talk to her.

{¶ 6} Appellee contacted the Circleville Police Department about these problems. Apparently, the police wanted more evidence before they took action. Nevertheless, Circleville Police Chief Wayne Gray testified that he warned appellant to stay away from appellee. Appellant did not heed that warning. Circleville Human Resources Director Teresa Cramer testified that she had told appellant to stop coming around appellee but that he did not listen to her.

{¶ 7} Appellant testified that he continued to visit the city administration building after he left office because he was still interested in the operation of city government—both as a concerned citizen and because he was interested in running for county commissioner. Appellant also explained that he attempted to converse with appellee on occasion because he was confused as to why she "wouldn't speak to [him] or acknowledge [him]" anymore and because he wanted to extend "an offer of friendship" between him and his wife and appellee and her husband. He explained that the Smiths seemed like a "nice young couple" who did not have a lot of other people around "to help them and support them."

{¶ 8} On July 28, 2004, the trial court issued findings of fact and conclusions of law. The court found that in light of the many warnings that appellant had received to cease contact with appellee, and considering appellant's continued insistence on contacting appellee despite those warnings, appellant knew he was causing her mental distress. The court found that appellant had engaged in menacing by stalking and stated that a "separate order will be filed herewith" to afford protection to appellee. The court issued its judgment the same day and ordered appellant to, inter alia, stop harassing, annoying, or contacting appellee and her husband and to stay 500 yards away from them. This appeal followed.[2]

{¶ 9} We jointly consider the two assignments of error, as they contain, in essence, the same argument that the trial court erred in granting the CSPO.

{¶ 10} Our analysis begins from the premise that the decision to grant a CSPO is left to a trial court's sound discretion and will not be reversed on appeal absent an abuse of that discretion. See *Guthrie v. Long*, Franklin App. No.

---

2. Appellant's notice of appeal incorrectly references the trial court's findings of fact and conclusions of law. Though denoted as a "judgment," that entry is not a final, appealable order because it did not enter judgment for one party or another, but simply called for the filing of a separate order that would in fact enter such a judgment. See *Prod. Credit Assn. v. Hedges* (1993), 87 Ohio App.3d 207, 210, 621 N.E.2d 1360, fn. 2; see, also, *Minix v. Collier* (July 16, 1999), Scioto App. No. 98CA2619, 1999 WL 528027. In the interests of justice, however, we will treat appellant's notice of appeal as referencing the CSPO which is, in fact, the final, appealable order in this case.

04AP–913, 2005-Ohio-1541, 2005 WL 737402, at ¶ 9; *Van Vorce v. Van Vorce,* Auglaize App. No. 2–04–11, 2004-Ohio-5646, 2004 WL 2377839, at ¶ 15; *Bucksbaum v. Mitchell,* Richland App. No. 2003–CA–0070, 2004-Ohio-2233, 2004 WL 943865, at ¶ 14. We note that an abuse of discretion is described as more than an error of law or judgment; rather, it implies that a trial court's attitude was unreasonable, arbitrary, or unconscionable. See *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140; *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242; *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486. When reviewing a matter under the abuse-of-discretion standard, appellate courts must not substitute their judgment for that of the trial court. See *State ex rel. Duncan v. Chippewa Twp. Trustees* (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181; *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301. To establish an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason, but instead passion or bias. *Vaught v. Cleveland Clinic Found.,* 98 Ohio St.3d 485, 2003-Ohio-2181, 787 N.E.2d 631, ¶ 13; *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1.

{¶ 11} A petitioner is entitled to a CSPO if she alleges and proves that a respondent harassed her in such a way as to violate Ohio's "menacing by stalking" statute. See R.C. 2903.214(C)(1). This statute prohibits engaging in a pattern of conduct that knowingly causes mental distress to another person. R.C. 2903.211(A)(1). A "pattern of conduct" means two or more actions closely related in time, and "mental distress" means any mental illness or condition that involves "some temporary substantial incapacity" or any mental illness or condition that normally requires "psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(1) and (2)(a) and (b).

{¶ 12} Appellant's first argument is that the trial court erred by issuing the CSPO because insufficient evidence exists to show that he engaged in a pattern of conduct that knowingly caused appellee mental distress. We disagree. A pattern of conduct requires only two or more actions closely related in time. R.C. 2903.211(D)(1). Appellant admitted that after he left the mayor's office, he visited the city building 15 to 20 times between January and May 2004. This evidence is sufficient to establish a pattern of conduct. Though appellant claimed that he had official reasons to be in the building during those times, the trial

court may well have disbelieved him and concluded that his purpose was to encounter appellee for non-official reasons.

{¶ 13} Even assuming that the court believed that appellant had visited the city building for official reasons, two other significant contacts occurred between appellant and appellee that constitute a pattern of conduct: (1) appellant's hiding in the bushes waiting for appellee to come outside after work and (2) appellant's cornering and blocking appellee from leaving the Dairy Queen so that he could engage her in conversation. While appellant had innocent explanations for these incidents, the trial court apparently did not believe his version of the events.

{¶ 14} We further note that additional evidence could also have factored into the trial court's determination. Appellee testified that appellant called her at home, followed her, and passed her while she drove to work in the morning and went home in the afternoon. Although the testimony was somewhat uncertain as to the precise dates, this evidence is sufficient to constitute a pattern of conduct for purposes of R.C. 2903.211(D)(1).[3]

{¶ 15} Appellant next argues that the trial court relied on evidence of acts outside the time frame of the alleged stalking. In particular, appellant objects to the trial court's finding of fact that he touched appellee's shoulder or whispered in her ear during the time that they worked together.

{¶ 16} Appellant is correct insofar as he asserts that appellee claims that appellant stalked her only after he ceased serving as mayor. He is also correct that the trial court cited instances of conduct that transpired while he still held office and that the two had, presumably, an amicable working relationship. We are not persuaded, however, that the trial court relied on that conduct. Rather, we believe the court referenced those acts as supplemental information to lay the factual groundwork for this case and not as evidence on which the court later relied in rendering its decision. Indeed, a review of the trial court's factual findings makes it patently clear that the court relied on events that occurred after appellant had left office (particularly his hiding in the bushes waiting for appellee to leave work, the incident at the Dairy Queen, and the fact that appellant ignored persistent warnings to stay away from appellee) in deciding that a CSPO was warranted in this case.[4]

---

3. In determining what constitutes a pattern of conduct for purposes of R.C. 2903.211(D)(1), courts must take every action into consideration "even if some of the person's actions may not, in isolation, seem particularly threatening." *Guthrie v. Long*, Franklin App. No. 04AP–913, 2005-Ohio-1541, 2005 WL 737402, at ¶ 12; *Miller v. Francisco*, Lake App. No. 2002–L–097, 2003-Ohio-1978, 2003 WL 1904066, at ¶ 11.

4. The trial court made no fewer than 15 findings of fact in its July 28, 2004 judgment. Its finding that appellant touched appellee's shoulder and whispered in her ear was made at

{¶ 17} Appellant's next argument is that insufficient evidence exists to establish that any of his actions caused appellee mental distress. Again, we disagree.

{¶ 18} "Mental distress" means any mental condition that involves some temporary, substantial incapacity or a mental condition that normally requires treatment or services whether or not they are requested. R.C. 2903.211(D)(2). The trier of fact does not need expert testimony on this issue, but may rely on its knowledge and experience in determining whether mental distress has been caused. *Noah v. Brillhart*, Wayne App. No. 02CA0050, 2003-Ohio-2421, 2003 WL 21078077, at ¶ 16; *State v. Scott*, Summit App. No. 20834, 2002-Ohio-3199, 2002 WL 1371070, at ¶ 14.

{¶ 19} In the present case, the trial court found that the stress brought on by appellant's repeated stalking and unwanted attention would normally require mental health services and/or psychological treatment. We believe that ample evidence exists in the record to support the trial court's finding. Appellee testified that she feared for her safety. Chief Gray testified that appellee was "pretty shook up" and "upset" when she reported to police appellant's repeated efforts to make contact with her. Valerie Sanzone, an administrative assistant for the city of Circleville, was on a cell phone with appellee during the incident at the Dairy Queen and related that appellee was "hysterical" when appellant blocked her car and tried to make contact with her. This testimony, coupled with the evidence that appellant had waited for appellee in the bushes outside her place of employment, followed her around town, and put himself in a position in which he passed her going to and from work is sufficient for a reasonable trier of fact to conclude that appellant knowingly caused appellee mental distress.

{¶ 20} We note that our conclusion on this point is buttressed by another factor. Appellee explained that appellant's conduct was so "excruciating" that it was a "part of the reason [she] quit [her] job." Evidence of changed routine corroborates a finding of mental distress. See *Noah*, supra, at ¶ 16; *Scott*, supra, at ¶ 14. The fact that appellant's unwanted attention influenced appellee to terminate her job with the city of Circleville indicates that she was, indeed, under mental distress and thus supports the trial court's conclusion.

{¶ 21} Finally, appellant argues that he reasonably explained the instances of stalking in his own testimony. He asserts that (1) his continued appearance in the city building was to obtain information for another run for

---

factual finding number four. Appellant cites other findings that the court made about the time he was in office as well. Again, however, we do not believe that these acts formed any basis for the court's decision.

office, (2) his presence in the bushes waiting for appellee one night after work was because of a prearranged meeting to which she consented and at which he was going to extend an offer of friendship to her and her husband, and (3) the Dairy Queen incident essentially did not happen and that he passed appellee's car just as she exited the parking lot.

{¶ 22} We acknowledge that appellant offered an explanation for virtually every alleged instance of stalking. It is up to the trial court, however, to determine what weight and credibility to afford the appellant's version of the events and the appellee's version of the events. See *Cole v. Complete Auto Transit, Inc.* (1997), 119 Ohio App.3d 771, 777–778, 696 N.E.2d 289; *GTE Tel. Operations v. J & H Reinforcing & Structural Erectors, Inc.*, Scioto App. No. 01CA2808, 2002-Ohio-2553, 2002 WL 1291953, at ¶ 10; *Reed v. Smith* (Mar. 14, 2001), Pike App. No. 00CA650. Appellate courts typically defer to trial courts on issues of weight and credibility because, as the trier of fact, the trial court is better able than the appellate court to view the witnesses and to observe their demeanor, gestures, and voice inflections and then to use those observations in weighing credibility. See *Myers v. Garson* (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. Moreover, a trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it. *Rogers v. Hill* (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438; *Stewart v. B.F. Goodrich Co.* (1993), 89 Ohio App.3d 35, 42, 623 N.E.2d 591; see, also, *State v. Nichols* (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80; *State v. Harriston* (1989), 63 Ohio App.3d 58, 63, 577 N.E.2d 1144. In the case sub judice, the trial court opted to accord more weight to appellee's version of the events than to appellant's version. This assessment is well within the trier of fact's province, and we find no error in that regard.[5]

{¶ 23} In summary, we find that sufficient evidence was adduced during the trial court proceedings to support the court's conclusion to issue a CSPO. Thus, we find no abuse of discretion in its decision. Accordingly, we conclude that appellant's two assignments of error are without merit and are hereby overruled, and we hereby affirm the trial court's judgment.

Judgment affirmed.

McFARLAND and GREY, JJ., concur.

---

5. Indeed, after appellant explained that he had hidden in the bushes to meet appellee and to extend an offer of friendship to her and her husband, the trial court even remarked that such course of action seemed odd. Appellant noted that people had told him the same thing before.

LAWRENCE GREY, J., retired from the Court of Appeals, Fourth District, sitting by assignment.