OPINION
{¶ 1} Respondent-appellant, Jose A. Palacio, appeals from a decision of the Butler County Court of Common Pleas, Division of Domestic Relations, granting a domestic violence civil protection order in favor of petitioner-appellee, Jody Tabor, acting on behalf of the parties' minor children.
 {¶ 2} The parties were divorced in 2002. In November of that year, they entered into a shared parenting plan regarding their two minor children. *Page 2 
 {¶ 3} On July 17, 2006, appellee petitioned the Butler County Domestic Relations Court for a domestic violence civil protection order against appellant on behalf of the parties' children, who were ten and eight years old at the time. Appellee's petition alleged, among other things, that appellant had spanked their ten-year-old child with a belt and had a history of hurting that child. One of the orders appellee sought to have the trial court issue was an order temporarily allocating to her the parental rights and responsibilities regarding the parties' children.
 {¶ 4} Appellant petitioned for a domestic violence CPO on behalf of his current wife, alleging that appellee had threatened her over the cell phone by telling her she was going to "kick her ass."
 {¶ 5} The matter was referred to a magistrate who held a hearing on the matter. Appellee testified at the hearing, as did the parties' ten-year-old child.[1] The parties' child testified that appellant had spanked him with a belt and that he was afraid of him. Appellant and his new wife also testified at the hearing, denying the accusations made by appellee and the parties' child.
 {¶ 6} At the close of the hearing, the magistrate found that appellant's petition for a CPO was not supported by sufficient evidence, and recommended that it be denied. However, the magistrate found that appellee's petition for a CPO on behalf of the parties' ten-year-old child was supported by a preponderance of the evidence, and recommended that appellee's petition be granted.
 {¶ 7} Appellant filed objections to the magistrate's decision, which the trial court overruled. The trial court adopted the magistrate's decision as the order of the court. *Page 3 
 {¶ 8} Appellant now appeals from the trial court's order, assigning the following as error:
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE TRIAL COURT ERRED IN FINDING THAT THE PETITIONER HAD A REASONABLE FEAR OF VIOLENCE ON THE DATE SET FORTH IN THE PETITION."
 {¶ 11} Appellant argues that the trial court's decision that appellee had a reasonable fear for the safety of their ten-year-old child as of the date on which appellee petitioned for a domestic violence CPO against him was contrary to the manifest weight of the evidence. We disagree with this argument.
 {¶ 12} "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household member are in danger of domestic violence." Felton v. Felton, 79 Ohio St.3d 34, 1997-Ohio-302, paragraph two of the syllabus. R.C. 3113.31 (A)(1) defines domestic violence to include the following:
 {¶ 13} "(a) Attempting to cause or recklessly causing bodily injury;
 {¶ 14} "(b) Placing another person by the threat of force in fear of imminent serious physical harm * * *;
 {¶ 15} "(c) Committing any act with respect to a child that would result in the child being an abused child as defined in section 2151.031
* * * of the Revised Code."
 {¶ 16} This court has held that "placing children in an environment where there is a substantial risk to their health and safety constitutes one form of domestic violence." Ferris v. Ferris, Clermont App. No. CA2005-05-043, 2006-Ohio-878, ¶ 28.
 {¶ 17} "The standard of review for an appellate court depends on the nature of the challenge to the protection order. * * * When the issue is whether a protection order should have been issued at all * * * the resolution of that question depends on whether the petitioner *Page 4 
has shown by a preponderance of the evidence that the petitioner or the petitioner's family or household member was entitled to relief.'Abuhamda-Sliman v. Sliman, 161 Ohio App.3d 541, 544-545 * * *, 2005-Ohio-2836,¶ 9; see, also, Felton, 79 Ohio St.3d 34 * * *, paragraph two of the syllabus." Ferris, 2006-Ohio-878 at ¶ 26.[2]
 {¶ 18} Where an appellant challenges a protection order on the ground that the order should not have been issued at all, an appellate court's review consists of reviewing the record to determine "whether there is sufficient, credible evidence to prove by a preponderance of the evidence that appellant engaged in any act of domestic violence." Id. at ¶ 27. See, also, Seasons Coal v. Cleveland (1984), 10 Ohio St.3d 77, 80; and C.E. Morris v. Foley Construction (1978), 54 Ohio St.2d 279, syllabus ("Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence").
 {¶ 19} In this case, the evidence showed that the incident which prompted appellee to seek a domestic violence CPO on behalf of the parties' minor children occurred on the Fourth of July weekend in 2006. This holiday weekend occurred within two weeks of the day appellee petitioned for a domestic violence CPO against appellant. Appellee testified that when the parties' ten-year-old child returned from parenting time with appellant during the 2006 Fourth of July weekend, he had marks on his buttocks. The child told appellee that appellant had spanked him with a belt.
 {¶ 20} The evidence revealed that other similar incidents had occurred over a period of four years, including one that had occurred six months before the Fourth of July incident. Appellee also testified about an incident that occurred around Christmas in 2002, as follows: *Page 5 
 {¶ 21} "He [appellant] dropped my children off to me in-two weeks before Christmas in 2002, I believe, and the next morning, * * * I woke up, [the parties' child] had bruises all over him. He had petechia eye [sic][3] all over his face."
 {¶ 22} Appellant testified that upon seeing the injuries on the parties' child, she called the police and had appellant arrested.[4]
Appellee also testified that appellant has "a history of choking me and verbally abusing me."
 {¶ 23} The parties' ten-year-old child testified that he was scared of appellant "all the time." When asked by appellee about "the environment" at appellant's house, the child testified that "It's mostly violence." When the magistrate asked what that meant, he answered, "Violence and then cussing." When the magistrate specifically asked what he meant by the word "violence," the child testified, "Like they put their hands on each other and other relatives." When the magistrate asked what he meant by using the words "putting their hands on each other," the child testified, "Like they — my dad [appellant] sometimes chokes Jaime [appellant's current wife], and I can hear." When appellee asked the child if appellant was "nice or mean to [him]," the child answered, "he yells a lot and cusses and threatens me." When appellee asked the child if he "fear[s] for [his] safety and [his] life when [he's] with [his] dad," the child answered, "Yes."
 {¶ 24} The magistrate expressly found the testimony of appellee and the parties' ten-year-old child to be credible, and the trial court expressly refused to overturn that finding, noting that the magistrate had seen all of the witnesses testify and, therefore, was in the best position to determine which of the witnesses were credible and which ones were not.
 {¶ 25} Appellant points out that appellee allowed him to exercise his parenting time *Page 6 
with the parties' children on July 11, 2006. He also notes that while appellee refused to allow him to exercise his visitation rights with the children on July 16, 2006, at which time he was accompanied to appellee's residence by police officers, she did not voice any concern to the officers about his committing possible acts of violence against the children but, instead, merely indicated that it was not appellant's parenting time. He asserts that this evidence demonstrates that the trial court's finding that appellee had a reasonable fear that imminent serious physical harm would befall the parties' children unless the CPO was issued was against the manifest weight of the evidence. We find this assertion unpersuasive.
 {¶ 26} Appellee provided a reasonable explanation for her decision to allow the parties' children to visit appellant on his birthday on July 11, 2006:
 {¶ 27} "The reason I filed this civil protection order today, in lieu of ten days ago, is because I asked [appellant] on the phone, last night, to [sic] if he could please not do this-to let Children Services make a determination and help the well-being of everybody instead of doing what we did here today because this was my children's biggest fear. And that is why — I tried to go that route[.]"
 {¶ 28} Appellee's testimony can be interpreted as showing that she was conflicted between, on the one hand, trying to de-escalate the situation by appealing to appellant for mutual cooperation, and on the other hand, taking the serious step of obtaining a domestic violence CPO against appellant. The facts that appellant has mentioned — that appellee allowed appellant to visit with the parties' children on his birthday on July 11, 2006, and did not mention her concerns about the children's safety to the police officers on July 16, 2006 when she denied visitation to appellant on the basis that it was not his time for visitation — were certainly factors for the magistrate and trial court to weigh and consider in determining whether appellee had met her burden of proof in the case.
 {¶ 29} However, the only question before us under this assignment of error is whether *Page 7 
the trial court's determination that appellee had proved by a preponderance of the evidence that she had a reasonable fear that appellant would cause the parties' ten-year-old child imminent serious physical harm was contrary to the manifest weight of the evidence.
 {¶ 30} In this case, there was some competent, credible evidence presented to show that appellee had proved by a preponderance of the evidence that she had a reasonable fear that the parties' ten-year-old child faced imminent serious physical harm by being around appellant. Therefore, the trial court's finding that she had such a fear was not against the manifest weight of the evidence. Ferris, 2006-Ohio-878
at ¶ 27; Seasons Coal, 10 Ohio St.3d 77; and C.E. Morris,54 Ohio St.2d 169, syllabus.
 {¶ 31} Appellant's first assignment of error is overruled.
 {¶ 32} Assignment of Error No. 2:
 {¶ 33} "THE TRIAL COURT ERRED IN FINDING THAT THE FOUR YEAR OLD INCIDENT OF DOMESTIC VIOLENCE WAS RELEVANT IN THE CONSIDERATION OF THE CURRENT DOMESTIC VIOLENCE ALLEGATION."
 {¶ 34} Appellant argues that the trial court erred in finding that the four-year-old incident of domestic violence was relevant in considering the current allegation of domestic violence against him. We disagree with this argument.
 {¶ 35} At the hearing held on her petition for a CPO, appellee testified about an incident that occurred at Christmas in 2002, which had led to appellant being charged with domestic violence. Specifically, she testified that the parties' ten-year-old child had returned home with bruises and petechiae, and that the police and a children services agency had become involved at that time.
 {¶ 36} `"Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. The decision as to *Page 8 
whether or not evidence is relevant is committed to the trial court's sound discretion, and the court's decision will not be overturned absent an abuse of that discretion. See State v. Sage (1987),31 Ohio St.3d 173, 180.
 {¶ 37} In this case, the trial court's decision finding the 2002 incident of domestic violence to be relevant was not an abuse of discretion since the evidence concerned an incident that was similar to the current situation before the court. The evidence was especially relevant to show the reasonableness of appellee's fear for her child's safety regarding appellant. See Solomon v. Solomon, 157 Ohio App.3d 807,2004-Ohio-2486, ¶ 23 (while the issuance of a CPO cannot be based solely on previous incidents of alleged domestic violence, a court may consider such past acts to determine whether the incident at issue constitutes domestic violence). Consequently, the trial court did not abuse its discretion in finding this testimony to be relevant.
 {¶ 38} Appellant's second assignment of error is overruled.
 {¶ 39} Assignment of Error No. 3:
 {¶ 40} "THE TRIAL COURT ERRED IN FINDING THAT CORPORAL PUNISHMENT BY A FATHER WAS DOMESTIC VIOLENCE."
 {¶ 41} Appellant asserts that even if he did spank the parties' ten-year-old child, as appellee and the child alleged,[5] such spanking was a legitimate disciplinary measure, and the trial court erred in finding that this type of corporal punishment amounted to domestic violence. We disagree with this argument.
 {¶ 42} In this case, there was ample evidence to support the trial court's determination that the punishment appellant inflicted on the parties' child went beyond any notions of *Page 9 
legitimate corporal punishment and, instead, amounted to physical abuse and, thus, domestic violence. First, the parties' child was only ten years old when appellant spanked him with a belt during the 2006 Fourth of July weekend. The testimony demonstrated that the spanking resulted in marks on the child's body. Appellee took the child to the physician. When the physician viewed the marks, he called children's services and investigation was started.
 {¶ 43} Second, there was evidence to show that appellant inflicted this form of punishment several times during the four-year period from 2002 to 2006. Specifically, the evidence showed that appellant had spanked the child six months prior to the time appellee petitioned for a CPO on July 17, 2006. Additionally, as we have discussed previously, appellant struck the parties' child in 2002 when the child was only six years old, which led to appellant being charged with domestic violence at that time. Appellee testified that on that occasion the child had returned home with bruises and petechiae, and that the police and a children services agency had become involved on that occasion.
 {¶ 44} Finally, the evidence showed that the parties' child was afraid of appellant. Specifically, the child testified that he was afraid for his safety and for his life when he was around appellant. As the trial court aptly noted, "physical discipline of a child may cross the boundaries of reasonable physical control into abuse." There was ample evidence presented in this case showing that the corporal punishment appellant inflicted on the parties' ten-year-old child crossed that boundary.
 {¶ 45} Appellant's third assignment of error is overruled.
 {¶ 46} Assignment of Error No. 4:
 {¶ 47} "THE TRIAL COURT ERRED IN FINDING THAT THE TESTIMONY OF THE MINOR CHILD AND HIS MOTHER WERE MORE CREDIBLE THAN THE TESTIMONY OF THE FATHER AND HIS WIFE." *Page 10 
 {¶ 48} Appellant argues that the trial court erred in finding the testimony of appellee and the parties' ten-year-old child to be more credible than his and his current wife's testimony. We disagree with this argument.
 {¶ 49} The trier of fact is permitted to believe all, part, or none of the testimony of any witness. Smith v. Wunsch, 162 0hio App.3d21,2005-Ohio-3498, ¶ 22. Questions regarding the credibility of witnesses are largely matters for the trier of fact, and his or her decision is owed deference since he or she is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."Seasons Coal Co., 10 Ohio St.3d at 80.
 {¶ 50} In this case, there is nothing in the record to demonstrate that the testimony of appellee or the parties' child was so inherently unworthy of belief that the trial court should have rejected that testimony and accepted the testimony of appellant and his current wife, instead. As the trial court noted in adopting the magistrate's decision as its own, the decision as to whether to believe appellee and the parties' child or appellant and his current wife was primarily one for the magistrate to make since she was in the best position to view the witnesses and assess their credibility or lack thereof. Id.
 {¶ 51} Appellant's fourth assignment of error is overruled.
 {¶ 52} Judgment affirmed.
WALSH and POWELL, J., concur.
[1] The magistrate interviewed the parties' other child in camera, and found the child "competent to testify as a witness." However, the other child did not testify at the hearing, and the magistrate stated in her decision that she "did not consider [the child's] comments in camera as evidence."
[2] By contrast, when the issue on appeal involves a challenge to thescope of the protection order issued by the trial court, the standard of review is whether the trial court abused its discretion in establishing the scope of the protection order. Id.
[3] The term "petechia eye" is an apparent reference to "petechiae," i.e., "[m]inute hemorrhagic spots of pinpoint to pinhead size, in the skin." Stedman's Medical Dictionary (5th Unabridged Lawyers' Ed.1982) 1062.
[4] Appellant was charged with domestic violence as a result of this incident in 2002. The charge was eventually dismissed after appellant took a domestic violence "diversion program."
[5] At the hearing, appellant acknowledged that he spanked the parties'child in 2002. However, he insisted that he no longer uses corporal punishment as a result of that incident. As noted, the magistrate expressly found the testimony of appellee and the parties' child to be credible on this issue. *Page 1