[Cite as *McKinley v. Kuhn*, 2011-Ohio-134.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| SUSAN C. MCKINLEY, | : | |
| Petitioner-Appellee, | : | Case No.  10CA5 |
| vs. | : | |
| KELSEY KUHN, | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| Respondent-Appellant. | : | |

_____

APPEARANCES:

COUNSEL FOR APPELLANT:     William J. Holt, 117 West Main Street, Suite 104, Lancaster, Ohio 43130

COUNSEL FOR APPELLEE:     Will Kernen, 158 East Main Street, P.O. Box 388, Logan, Ohio 43138-0388
_____
CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 1-10-11

ABELE, J.

{¶ 1}   This is an appeal from a Hocking County Common Pleas Court judgment that issued a civil stalking protection order (CSPO) against Kelsey Kuhn, respondent below and appellant herein.

{¶ 2}   Appellant raises the following assignment of error for review:

> "THE TRIAL COURT COMMITTED REVERSIBLE ERROR
> IN ISSUING A CIVIL PROTECTION ORDER UNDER R.C.
> 2903.214 AGAINST THE RESPONDENT BECAUSE
> THERE WAS INSUFFICIENT EVIDENCE FOR THE TRIAL
> COURT TO FIND THAT THE RESPONDENT ENGAGED IN
> A PATTERN OF CONDUCT."

**{¶ 3}**   On March 3, 2010, Susan C. McKinley, petitioner below and   appellee herein, filed a petition for a CSPO pursuant to R.C. 2903.214.   Appellee alleged that appellant "has threatened more than once to kill my husband" and that he violated a condition of his probation by entering her property.   The trial court (1) issued an ex parte CSPO in favor of appellee and her husband that would expire on May 3, 2010, and (2) scheduled the matter for a full hearing.

**{¶ 4}**   On March 24, 2010, the trial court held a hearing.   At the hearing, several witnesses testified that on June 6, 2009, appellant threatened to shoot appellee's husband, Alan McKinley.   Appellant admitted to law enforcement officers who responded to this incident that he did, in fact, make this threat.   Subsequently, appellant was convicted of disorderly conduct and ordered not to enter appellee's property.

**{¶ 5}**   With respect to the June 6, 2009 incident, appellee testified that appellant told her   husband "that he was going to blow [his] f-ing had off."   Appellee then walked to him and

> "put [her] hand on his chest and * * * said, Kelsey, just go home and he stepped back and he just kept coming back towards me saying he was going to kill Alan, you know, and he just kept going on and on.   He wouldn't stop.   He finally–his mom came out.   I told his mom, I said get him back over to your house and get him in there and tell him to shut up or I'm going to call the law.
>
>     Well, she got him over there and he kept coming out the door and he kept screaming that he was going to kill Alan.   So I called the sheriff's department and they came out and they took him."

Appellee stated that shortly after the June 6, 2009 incident, she received a phone call from appellant's counselor at Tri-County Mental Health that caused her great concern.

Although the exact nature of the conversation is not revealed in the record, the counselor apparently advised appellee of a legal duty to disclose information to appellee.

{¶ 6}   Appellant apparently did nothing to bother appellee until February 26, 2010 when she observed appellant standing at the end of her driveway.   After approximately ten minutes, he left. He returned, however, after another five or ten minutes.   She explained that she interpreted appellant's presence on her property as a threat because "[h]e knows he's not allowed on [her] property."   She further explained that appellant was talking to a neighbor who also was near the end of her driveway and who was waiting for his children to return home from school.

{¶ 7}   Appellee testified that on March 3, 2010, as she was leaving for work, a female from appellant's house "flipp[ed her] off" and called her "an f-ing bitch."   She stated that this incident prompted her to file the petition for a protection order.   After she filed the petition, she learned that someone at appellant's house had been videotaping her residence and she also learned that appellant has a criminal record. She stated that after learning about his criminal record, she is "scared to death that he's going to do something to [her] or [her] husband."

{¶ 8}   Kathy Kernen, appellant's probation officer, testified that after appellee filed the petition for a CSPO, appellant told her, "I feel like I'm getting backed into a corner and I'll do what I need to, to get out."   Kernen stated that appellant's comment concerned her and she that interpreted it as a threat.

{¶ 9}   Patricia Cremean, a neighbor who helped appellee after she had surgery

in late 2009, stated that every time she pulled her car into appellee's driveway,

appellant would exit his house and stay outside until she left.

{¶ 10} After hearing the evidence, the trial court granted appellee's petition and

explained:

> " * * * Mr. McKinley's testimony was that he only felt threatened one time.   That was the time where the incident occurred in the garage, but that he felt the threat was credible because of the nature of the threat and also the fact that he already knew from a prior incident that [appellant] did possess weapons.   Arguably, I think you could argue whether that's a pattern or not a pattern, both ways.
>      In the case of Mrs. McKinley though, it is a little bit different in my view.   She saw and heard what she saw and it caused her to be scared or afraid.
>      After that other things occurred that enhanced her fears rightly or wrongly.   One of those was seeing somebody else on her property, that somebody else, [appellant], that she knew was forbidden by the municipal court to be on her property.
>      And we have no testimony saying [appellant] was not on her property and we have [appellee's] testimony that he was and in the absence of contradiction the court has to accept that.
>      Then additional corroboration comes after the petition has been filed in the testimony of the probation officer here to language that she heard that she thought was threatening and obviously somehow that information got back to the petitioner here because Ms. Kernen was subpoenaed to be here to tell what she told today.
>      And also I don't know what [appellant's] record is.   But whatever it is, it apparently enhanced [appellee's] fears about him.
>      So information came to her.   At least one of those instances of information could be considered another act that would in my judgment establish a pattern."

This appeal followed.

{¶ 11} In his sole assignment of error, appellant asserts that the record does not

contain sufficient evidence to establish that he engaged in a pattern of conduct so as to

justify a civil protection order.

{¶ 12} We initially note that the decision whether to grant a civil protection order

is within the trial court's sound discretion.   See, e.g., <u>Smith v. Wunsch</u>, 162 Ohio

App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, at ¶10.   "The term 'abuse of discretion'

connotes more than an error of law or of judgment; it implies that the court's attitude is

unreasonable, arbitrary or unconscionable."   <u>Blakemore v. Blakemore</u> (1983), 5 Ohio

St.3d 217, 219, 450 N.E.2d 1140.   Moreover, an "appellate court may not simply

substitute its judgment for that of the trial court so long as there is some competent,

credible evidence to support the lower court findings."   <u>State ex rel. Celebrezze v.</u>

<u>Environmental Enterprises, Inc.</u> (1990), 53 Ohio St.3d 147, 154, 559 N.E.2d 1335.

{¶ 13} When an appellate court reviews a trial court's judgment, the appellate

court must generally defer to the fact-finder's weighing of the evidence credibility

determination.   See, e.g., <u>Seasons Coal Co., Inc. v. Cleveland</u> (1984), 10 Ohio St.3d

77, 81, 461 N.E.2d 1273.   As the court explained in <u>Seasons Coal</u>:

> "A reviewing court should not reverse a decision simply because it
> holds a different opinion concerning the credibility of the witnesses and
> evidence submitted before the trial court.   A finding of an error in law is a
> legitimate ground for reversal, but a difference of opinion on credibility of
> witnesses and evidence is not.   The determination of credibility of
> testimony and evidence must not be encroached upon by a reviewing
> tribunal, especially to the extent where the appellate court relies on
> unchallenged, excluded evidence in order to justify its reversal."

Id.   Additionally, a trier of fact is free to believe all, part, or none of the testimony of any

witness who appears before it.   See <u>Rogers v. Hill</u> (1998), 124 Ohio App.3d 468, 470,

706 N.E.2d 438; <u>Stewart v. B.F. Goodrich Co.</u> (1993), 89 Ohio App.3d 35, 42, 623

N.E.2d 591; see, also, <u>State v. Nichols</u> (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80;

<u>State v. Harriston</u> (1989), 63 Ohio App.3d 58, 63, 577 N.E.2d 1144.

{¶ 14} R.C. 2903.214 governs the filing of a "petition for protection order."   R.C.

2903.214(C) provides:

> A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member, by filing a petition with the court.   The petition shall contain or state all of the following:
> (1) An allegation that the respondent is eighteen years of age or older and engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order or committed a sexually oriented offense against the person to be protected by the protection order, including a description of the nature and extent of the violation;
> * * * *
> (3) A request for relief under this section.

Thus, before a court may grant a CSPO, a petitioner must demonstrate, by a preponderance of the evidence, that the respondent has engaged in menacing by stalking in violation of R.C. 2903.211.   See Strausser v. White, Cuyahoga App. No. 92091, 2009-Ohio-3597, at ¶30; Caban v. Ransome, Mahoning App. No. 08MA36, 2009-Ohio-1034, at ¶7.   The menacing by stalking statute, R.C. 2903.211(A)(1), provides: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."   R.C. 2903.211 was "not enacted for the purpose of alleviating uncomfortable situations, but to prevent the type of persistent and threatening harassment that leaves victims in constant fear of physical danger." Kramer v. Kramer, Seneca App. No. 13-02-03, 2002-Ohio-4383, at ¶17.

{¶ 15} "'Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents. * * * *'" R.C. 2903.211(D)(1).   Thus, one incident is insufficient to establish a "pattern of conduct."   See State v. Scruggs (2000), 136 Ohio App.3d 631,

737 N.E.2d 574; Dayton v. Davis (1999), 136 Ohio App.3d 26, 735 N.E.2d 939;

Baddour v. Fox (Nov. 15, 2000), Licking App. No. 00 CA 0035.   In determining what

constitutes a pattern of conduct for purposes of R.C. 2903.211(D)(1), courts must take

every action into consideration "even if some of the person's actions may not, in

isolation, seem particularly threatening."   Guthrie v. Long, Franklin App. No. 04AP-913,

2005-Ohio-1541, at ¶12; Miller v. Francisco, Lake App. No. 2002-L-097,

2003-Ohio-1978, at ¶11; see, also, Smith v. Wunsch, 162 Ohio App.3d 21,

2005-Ohio-3498, 832 N.E.2d 757, at fn.3.

{¶ 16} "R.C. 2903.211 does not attempt to define or give further meaning to the

phrase 'closely related in time.'"   State v. Bone, Franklin App. No. 05AP-565,

2006-Ohio-3809, at ¶24.   "Consequently, whether the incidents in question were

'closely related in time' should be resolved by the trier of fact 'considering the evidence

in the context of all the circumstances in the case.'"   Id., quoting State v. Dario (1995),

106 Ohio App.3d 232, 238, 665 N.E.2d 759.

{¶ 17} Furthermore, to establish the physical harm element, the petitioner need

not show that the respondent made an explicit or direct threat of physical harm.

Kramer v. Kramer, Seneca App. No. 13-02-03, 2002-Ohio-4383, ¶15.   Instead, "the

test is whether the offender, by engaging in a pattern of conduct, knowingly caused

another to believe the offender would cause physical harm to him or her."   Id.   R.C.

2903.211(D)(2) defines "mental distress" as any of the following:

> (a) Any mental illness or condition that involves some temporary substantial incapacity;
> (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric

treatment, psychological treatment, or other mental health services. "Mental distress need not be incapacitating or debilitating." Perry v. Joseph, Franklin App. Nos. 07AP-359, 07AP-360, and 07AP-361, 2008-Ohio-1107, at ¶8.   Additionally, expert testimony is not necessary to establish mental distress.   Id.   Instead, a trial court may rely on its knowledge and experience in determining whether the petitioner suffered mental distress.   See Smith, supra, at ¶18.   We further observe, however, that "mental distress for purposes of menacing by stalking is not mere mental stress or annoyance."   Caban, supra, at ¶29.

{¶ 18} In the case at bar, appellee claims two specific incidents constitute a pattern of conduct.   The first occurred on June 6, 2009 when appellant directly threatened to cause serious physical harm to Mr. McKinley.   The second incident occurred on February 26, 2010, when appellant trespassed onto appellee's property.

{¶ 19} Appellee also argues that appellant harassed her and her husband "on numerous occasions" and that he caused them to believe that he would cause them physical harm or that he caused them mental distress.   Appellee asserts that when appellant threatened to kill her husband, she suffered mental distress.   Appellee claims that her distress intensified when she observed appellant on her property on February 26, 2010, and when she learned about threatening comments he made to others.   She further states that appellant "loitered" outside his home to watch the activities at her house and that he began videotaping her house after she filed the petition for a protection order.

{¶ 20} Based upon the combination of factors cited above, we are unable to find that the trial court's decision to issue a protection order constitutes an abuse of

discretion.   Appellant made a direct, physical threat to kill Mr. McKinley.   After that threat, he was convicted of disorderly conduct and ordered to stay off appellee's property.   Appellant, however, entered appellee's property in February 2010.   This act prompted appellee to file the petition for a protective order.   Appellee also observed appellant watching her house, which caused her to fear that he may be planning to cause her or her husband physical harm, as he had threatened to do in June 2009.

{¶ 21} It is important to recognize that we, as an appellate court, may not simply substitute our judgment for the trial court's, especially when its judgment relies upon its own observation of the witnesses and appellant.   We, however, recognize that if the only incident was appellant's threat to kill Mr. McKinley, then a protection order would not have been appropriate under the statute.   We also recognize that appellant asserts that if he was on appellee's property on February 26, 2010, a point that he disputes, his purpose was to talk to a neighbor.   The trial court, however, is entitled to disbelieve appellant's innocent explanation and to consider his trespass in combination with other conduct and conclude that appellant's presence on appellee's property constituted a pattern of conduct that caused appellee to believe appellant would cause her physical harm or that caused her mental distress.

{¶ 22} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Kline, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.