[Cite as *Cox v. Doss*, 2019-Ohio-2592.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| THOMAS R. COX | : | |
| | : | |
| Petitioner-Appellee | : | Appellate Case No. 2018-CA-29 |
| | : | |
| v. | : | Trial Court Case No. 2018-DR-102 |
| | : | |
| JOSEPH H. DOSS | : | (Appeal from Common Pleas Court- |
| | : | Family Court Division) |
| Respondent-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of June, 2019.

. . . . . . . . . . .

MICHAEL B. MILLER, Atty. Reg. No. 0079305, 2233 Miamisburg-Centerville Road, Dayton, Ohio 45459
    Attorney for Petitioner-Appellee

REGINA ROSEMARY RICHARDS, Atty. Reg. No. 0079457, 4 West Main Street, Suite 707, Springfield, Ohio 45502
    Attorney for Respondent-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Respondent-appellant Joseph Doss appeals from the trial court's order granting a civil stalking protection order (CSPO) to his estranged wife's parents. He first contends that the general division of the common pleas court erred by transferring the matter to the domestic relations-juvenile-probate division of the common pleas court ("the family court"). He also contends that the evidence submitted during the full hearing was insufficient to establish the necessary elements of R.C. 2903.211 by a preponderance of the evidence. Finally, he contends that the CSPO violated his right to parent his children.

{¶ 2} Because Joseph failed to raise any objection to the transfer of the case, we conclude that any error has been waived, and we cannot find that this matter rises to the level of plain error. Further, we conclude that the evidence supported the issuance of the CSPO. Finally, the record does not support Joseph's claim that the issuance of the CSPO impinged upon his right to parent his children. Accordingly, the judgment is affirmed.

## I. Course of the Proceedings

{¶ 3} Holly and Joseph Doss[1] are married and have two minor children as a result of their marriage. In 2018, Holly filed a complaint for divorce in the Champaign County family court. On April 11, 2018, Holly and the two children moved into the home of Holly's parents, Thomas and Deborah Cox.

{¶ 4} On May 8, 2018, Thomas Cox filed a petition for a CSPO in the general division of the Champaign County Court of Common Pleas. The petition included

---

[1] For ease of reference, we will refer to all individuals by their first name.

Deborah as a person seeking protection under the order.   An ex parte order of protection was issued the same day.

{¶ 5} A full hearing on the CSPO was conducted before a magistrate on July 25, 2018.   On August 6, 2018, before a decision was rendered by the magistrate, the general division judge entered an order transferring the matter to the family court.   The order transferring the matter to the family court stated, in pertinent part, as follows:

> Magistrate Schockling and the [General Division] Court are both concerned that the decision reached by either Magistrate Schockling or the Court * * * could conflict with the orders of the Family Court as they pertain to Family Court rulings not only on Petitioner Holly Doss' Domestic Relations Protection Order, but also to orders of the Family Court as they pertain to Family Court rulings in the divorce proceedings.

> For example, this Court could grant the Petition, but modify the order to allow the Respondent to be present at Petitioner Cox's residence for the purpose of visiting his children when the Petitioner Cox or his wife are not present in the house.   Such an order could be contrary to a potential Family Court ruling that could order the Respondent not to have contact with Petitioner Holly Doss or the children unless it follows a visitation schedule approved by the Family Court.

> Contrary rulings between the General Division and the Family Court could result in confusion for the parties and any law enforcement officers that are called by either Petitioner Cox, Petitioner Cox's wife, Petitioner Holly Doss, or the Respondent in an effort to enforce the order that they

believe is most advantageous to them.

Relevant to this concern, the [Court] notes the following:

1.   Holly Doss and Joseph Doss are currently involved in divorce proceedings.   Holly Doss filed a Petition for Domestic Violence Civil Protection Order against Joseph Doss.   The Family Court granted an ex parte protection order for Holly Doss.

2.   Concurrent with the Family Court proceedings, the Coxes filed for a civil stalking protection order against Joseph Doss in this Court.   The Coxes were granted an *ex parte* protection order on May 8, 2018.

3.   While the Family Court awarded possession of the marital residence * * * to Holly Doss * * *, the structure is currently uninhabitable due to fire damage.   * * *   As a result, Holly Doss and the children currently reside with her parents, Thomas and Deborah Cox, the Petitioners in the action in the case at bar.

4.   It may be sometime before Holly Doss can live independently of her parents * * *.   Thus, the duration of the current living arrangement is indefinite, and a reason for a single court to hear both matters.

5.   Since Holly Doss and the children will be residing with her Petitioner-parents for the foreseeable future, having two different courts consider their respective petitions for protection orders against Joseph Doss creates the distinct possibility that they may

contain inconsistent terms.

* * *

7.   The visitation schedule set forth in the temporary orders requires Respondent's visitation with his children take place in the presence of his mother or father.   Visitation frequently takes place at the residence of Respondent's mother * * * who resides * * * just across from the martial [sic] residence.   The Coxes appear to be doing the yardwork at [the marital residence], perhaps because their daughter currently has possession. Thus, Joseph Doss could violate this Court's protection order by simply visiting his mother at her residence while the Coxes are at [the marital residence] unbeknownst to him.

8.   While there is no evidence of such conduct, the Coxes could, in theory, frustrate Respondent's ability to see his children by simply deciding to do yardwork during visitation.

The Court finds that the facts, circumstances and issues presented in this case are so inextricably intertwined with the issues to be resolved in the Family Court litigation that in order to minimize these possibilities, a single court should resolve both petitions.   Such consolidation would ensure consistency and fairness to all parties involved.

Dkt. No. 3.

{¶ 6} On August 8, 2018, the family court issued an order accepting transfer of the case and incorporating its filings into pending domestic relations Case No. 2018 DR 102.

In the order, the family court stated that it would "make a written decision regarding [the CSPO] based upon the transcript and exhibits from the full hearing held before [the magistrate] on July 25, 2018." Dkt. No. 1. Thereafter, on August 23, 2018, the family court entered an order granting a CSPO to Thomas and Deborah Cox. The court stated that its order was "a final appealable order subject only to appeal, not to objections[,]" because the magistrate had not entered a decision following the hearing. Dkt. No. 5.

{¶ 7} Joseph appeals.

## II. Transfer Analysis

{¶ 8} Joseph's first assignment of error states as follows:

THE CIVIL COURT ABUSED ITS DISCRETION AFTER THE FULL HEARING BEFORE THE MAGISTRATE WHEN IT SUA SPONTE TRANSFERRED THE ACTION TO THE FAMILY COURT FOR CONSOLIDATION WITH CASE NO. 18 DR 102 BECAUSE CIV.R. 65.1(F)(3)(A) REQUIRES THE MAGISTRATE TO DENY OR GRANT THE PROTECTION ORDER AFTER CONDUCTING A FULL HEARING.

{¶ 9} Joseph contends that the general division of the common pleas court erred by transferring the case to the domestic relations division. In support, he argues that Civ.R. 65.1 required the magistrate to issue an order following the hearing.

{¶ 10} We can find no statute or case law prohibiting the transfer made by the general division of the common pleas court to the family court division. While R.C. 2903.214 does state that the general division has jurisdiction over the proceedings in an action for a CSPO, it does not purport to give exclusive jurisdiction to the general division.

Had the General Assembly intended to do so, it could have used language indicating its intent to so limit CSPO actions. *See*, *e.g.*, R.C. 2101.24 (probate court has exclusive jurisdiction over certain types of actions.) Further, under the facts of this case, we conclude that the general division's decision to transfer the cause to the family court was a sound exercise of the court's discretion.

{¶ 11} We also note that Joseph failed to object in either the general division or the family court regarding the transfer, despite the fact that he had approximately 15 days between the transfer and the date that the family court issued a decision on the CSPO. Thus, by his failure to object to either the transfer or the method the family court used to decide the CSPO petition, Joseph has waived all but plain error. "In appeals of civil cases, the plain-error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

{¶ 12} Civ.R. 65.1(F)(3)(a) states that when a CSPO full hearing is referred to a magistrate, the magistrate "shall, upon conclusion of the hearing, deny or grant a protection order." This procedure, not followed in this case, assures that before a CSPO is issued, a judicial officer is given the opportunity to make credibility determinations based upon live testimony. Thus, the general division magistrate should have issued the CSPO, and then, upon transfer, the family court could have imposed CSPO terms consistent with any family court orders. However, we cannot conclude that this error

affected the basic fairness of the proceeding so that plain error can be found.

{¶ 13} Accordingly, the first assignment of error is overruled.


### III.    Issuance of CSPO

{¶ 14} Joseph's second assignment of error provides:

THE FAMILY COURT'S DECISION TO GRANT THE CIVIL PROTECTION ORDER WAS AN ABUSE OF DISCRETION BECAUSE THERE WAS NOT SUFFICIENT, COMPETENT, CREDIBLE EVIDENCE TO SUPPORT A FINDING THAT APPELLANT ENGAGED IN A PATTERN OF CONDUCT DESIGNED TO KNOWLINGLY CAUSE APPELLEE MENTAL DISTRESS WERE [SIC] THERE WAS A LOGICAL EXPLANATION FOR HIS CONDUCT.

{¶ 15} In this assignment of error, Joseph claims that the evidence did not support the issuance of the CSPO.

{¶ 16} In order to obtain a civil stalking protection order under R.C. 2903.214, a petitioner must show, by a preponderance of the evidence, that the respondent engaged in conduct constituting menacing by stalking as defined by R.C. 2903.11. R.C. 2903.214(C)(1); *Fouch v. Pennington*, 12th Dist. Clermont No. CA2011-10-075, 2012-Ohio-3536, ¶ 9-10; *Henry v. Coogan*, 12th Dist. Clermont No. 2002-05-42, 2002-Ohio-6519, ¶ 15. Menacing by stalking is defined by R.C. 2903.211(A)(1), which states that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." "A person acts knowingly, regardless of his purpose, when

he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). A "pattern of conduct" is defined as two or more actions or incidents closely related in time. R.C. 2903.211(D)(1).

{¶ 17} "Mental distress" is defined in R.C. 2903.211(D)(2) as "[a]ny mental illness or condition that involves some temporary substantial incapacity [or] [a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services. * * *" "Mental distress need not be incapacitating or debilitating." *Jenkins v. Jenkins*, 10th Dist. Franklin No. 06AP-652, 2007-Ohio-422, ¶ 19. The trial court "may rely on its knowledge and experience in determining whether mental distress has been caused." (Citations omitted.) *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 18 (4th Dist.)

{¶ 18} In this case, the following evidence was adduced during the hearing through the testimony of Thomas and Deborah. On April 11, 2018, the day Holly and the children moved in with her parents, Joseph began sending Thomas disparaging texts as well as texts which Thomas perceived as threats. Thomas testified that he was receiving texts from Joseph every two to three days. Joseph also began driving past the Cox home at all hours, while playing loud music and shouting obscenities. Several police reports were filed regarding the behavior.

{¶ 19} On April 27, Thomas drove Holly to the insurance agency owned by Joseph's family because Holly needed to retrieve a personal belonging. Thomas stayed

outside while Holly went in. However, he walked in to get Holly when he heard raised voices. The next day, Joseph sent a text message to Thomas which stated, "You are a f*****g p***y. Don't ever darken my door again you felon." Exh. 2. On April 30, 2018, Joseph sent a text message to Thomas which stated:

Tell your wife that in light of recent, personal financial developments I won't be able to "buy [your] house and rent it" like she suggested to Holly last year. I actually considered it as a kindness but the reality of owning that sh—tbox money pit is just too much for this newly-single father to muster. I hope you planned for your retirement beyond that desperate ploy you phoney-ass gold bricker. Maybe Holly's boyfriend has enough money to keep you in wine bottles and spli [sic] restaurant cheques. Enjoy those Sallie-Mae bills showing up at 304, oh wait, you "put three kids through college" I forgot! Get bent you unic [sic]. I can not WAIT to testify? I want my dog back, too. Food is 50 bucks a bag and he eats like a horse, I know you'll come around."

Exh. 8.

{¶ 20} Joseph drove by the Cox home on May 2 playing loud music. He also drove by the home on May 4. Police reports were filed regarding both incidents.

{¶ 21} On Sunday, May 6, 2018, Thomas received a text from Joseph which stated, "Where are my children? I see your white Honda is park3d [sic] on Xenia Ave. In Yellow Springs [sic]. I knew if sat [sic] at the Brewery long enough I'd get to see my children. You should find out from Holly's attorney if it's wise for you all to keep my kids from me until our hearing on the 29th." Exh. 7.

{¶ 22} The following day, Monday, May 7, 2018, Thomas and Deborah decided to travel to Columbus to shop. One of the Doss children was with them. According to Thomas's testimony, they drove approximately 45 minutes toward Columbus. At that point, they made a spur of the moment decision to stop to eat dinner before proceeding into Columbus to shop. At approximately 5:00 p.m., they stopped at a restaurant in Dublin, Ohio and remained there for approximately 45 minutes. As they were exiting the restaurant, they observed Joseph sitting alone at the bar of the restaurant. On May 8, 2018, Thomas filed the petition for the CSPO. The next day, a police report was filed because Joseph again drove by their home.

{¶ 23} Thomas testified that he was scared and fearful that Joseph was seeking him out to do him harm. He testified that Joseph's behavior made him fearful and caused him anxiety because Joseph's mental state was "over the edge." Tr. p. 17. Deborah testified that they knew Joseph was angry, but when his behavior escalated, she began to suffer from anxiety. She testified that she was unable to sleep because every time she heard a noise she was worried that Joseph was outside and that he would try to enter the home.

{¶ 24} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Nilavar v. Osborn*, 137 Ohio App.3d 469, 483, 738 N.E.2d 1271 (2d Dist.), quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276 (1984).

{¶ 25} We find that the evidence was sufficient to support the issuance of the CSPO. Clearly there is evidence upon which a reasonable trier of fact could conclude

that Joseph committed the offense of menacing by stalking.

{¶ 26} The second assignment of error is overruled.

## IV.    Due Process

{¶ 27} The third assignment of error asserted by Joseph states as follows:

THE FAMILY COURT ABUSED ITS DISCRETION BECAUSE THE SCOPE OF THE CIVIL PROTECTION ORDER DEPRIVES APPELLANT OF DUE PROCESS WHERE IT LIMITS HIS ESSENTIAL PARENTAL RIGHTS WITHIN FIVE HUNDRED FEET OF APPELLEES WITHOUT A FINDING OF UNSUITABILITY BY CLEAR AND CONVINCING EVIDENCE.

{¶ 28} In this assignment of error, Joseph states that Holly, Thomas and Deborah "alienated the minor children from their father as if R.C. 3109.042 applied where an unmarried mother is deemed sole custodian."  He then states that the family court "endorsed" this behavior and "further deprived" him of his right to parent his children when it issued the CSPO.

{¶ 29} Quite frankly, we are baffled by Joseph's reference to R.C. 3109.042, which states that "[a]n unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian."  R.C. 3109.042(A).  A review of the record reveals that Joseph and Holly are married and that the family court, at the time of the CSPO hearing, had entered temporary orders designating Holly as the residential parent and legal custodian of the minor children.  The orders also granted Joseph parenting time in accordance with the Champaign County

Family Court Standard Order of Parenting Time. Thus, we assign no merit to this argument.

**{¶ 30}** However, Joseph also claims that the CSPO infringes upon his parenting rights. In support, he cites to the testimony of his mother at the CSPO hearing; she testified that Joseph had been prevented from attending the children's birthday parties, a ballet recital and a graduation ceremony because the Coxes were present during those events. She also testified that the Coxes prevented Joseph from driving the children to school.[2] Joseph did not testify to these claimed infringements.

**{¶ 31}** In any event, the incidents all occurred prior to the entry of the CSPO, and there is no evidence that they impinged upon Joseph's parenting time as set forth in the visitation order. Further, if Joseph perceives that the Coxes or his wife continue to act in a manner to deprive him of his parenting time, he may bring that issue to the attention of the family court. Any disposition of this issue by this court would be premature.

**{¶ 32}** The third assignment of error is overruled.

### V. Conclusion

**{¶ 33}** All of Joseph's assignments of error being overruled, the judgment of the Champaign County family court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

---

[2] We note Joseph testified that prior to the divorce action, Holly was the parent responsible for transporting the children to school.

Copies sent to:

Michael B. Miller
Regina Rosemary Richards
Hon. Lori L. Reisinger