OPINION
{¶ 1} This case comes to us on the accelerated calendar. App. R. 11.1, which governs accelerated calendar cases, provides in pertinent part:
 {¶ 2} "(E) Determination and judgment on appeal. The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 3} This appeal shall be considered in accordance with the aforementioned rule.
 {¶ 4} This is an appeal from the granting of a Stalking Civil Protection Order by the Coshocton County Court of Common Pleas against Appellant-Respondent, Eric Todd Jackson.
 STATEMENT OF THE FACTS AND CASE {¶ 5} The following facts are pertinent to this appeal:
 {¶ 6} On February 10, 2006, Appellee-Petitioner filed an Ohio Revised Code Section 2903.214 Petition for Stalking Protection Order against Respondent-Appellant. In the petition Appellee alleged that Appellant engaged in menacing by stalking.
 {¶ 7} On February 10, 2006, the Coshocton County Court of Common Pleas held a hearing and granted an ex parte stalking civil protection order on behalf of Petitioner-Appellee, Fran Tumblin.
 {¶ 8} On February 16, 2006, a full hearing was conducted. After the presentation of evidence, the trial court granted the stalking civil protection order setting forth findings of fact and conclusions of law stating that sufficient evidence existed to support a finding of mental distress caused by the Respondent-Appellant's course of menacing conduct. The trial court specifically found, that appellant "had refused, without good cause, to leave [Appellee's] house after repeated requests to leave the house."
 {¶ 9} It is from this decision that Respondent-Appellant appeals assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 10} "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT GRANTED THE CIVIL PROTECTION ORDER AGAINST APPELLANT.
 {¶ 11} "II. THE TRIAL COURT'S ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE EVIDENCE IN THIS CASE DOES NOT WARRANT THE ISSUANCE OF A CIVIL PROTECTION ORDER."
 I., II. {¶ 12} We shall deal with Appellant's assignments of error simultaneously. In his first and second assignments of error, Appellant argues that the trial court's decision was against the manifest weight of the evidence and that in reaching its conclusions, the trial court abused its discretion.
 {¶ 13} The decision whether or not to grant a civil protection order is well within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. Williams v. McDougal (May 16, 2001), Gallia App. No. 00CA014, unreported, citing, Woolum v. Woolum (1999),131 Ohio App. 3d 818, 821, 723 N.E.2d 1135. An abuse of discretion connotes more that a mere error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St. 3d 217, 219, 450 N.E.2d 1140.
 {¶ 14} Moreover, the trier of fact is in the best position to view the witnesses and their demeanor. Therefore, in making a determination that a judgment is against the manifest weight of the evidence, this court is mindful that we must indulge every reasonable presumption in favor of the lower court's judgment as finders of fact. Shemo v. Mayfield Hts. (2000),88 Ohio St.3d 7, 10, 722 N.E.2d 1018; Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226, 638 N.E.2d 533.
 {¶ 15} It is well established that "[j]udgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence". C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279. 376 N.E.2d 578, syllabus. In other words, "an appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings." State ex rel. Celebrezze v. EnvironmentalEnterprises, Inc. (1990), 53 Ohio St.3d 223, 226,638 N.E.2d 533.; Karches v. Cincinnati (1988), 38 Ohio St. 3d 12, 19,526 N.E.2d 1350. Thus, in the event that the evidence is reasonably susceptible to more than one interpretation, this court must construe it consistently with the lower court's judgment.Gerijo at 226;
 {¶ 16} Ohio Revised Code § 2903.214 governs the filing of petition for a civil stalking protection order. R.C. §2903.214(C) provides: "A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member by filing a petition with the court".
 {¶ 17} To be entitled to a stalking civil protection order, the petitioner must show, by a preponderance of the evidence that the respondent engaged in menacing by stalking a violation of R.C. § 2903.211, against the person seeking the order.
 {¶ 18} Revised Code § 2903.211(A), "menacing by stalking", states that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
 {¶ 19} As used in this section a "Pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents". "R.C. 2903.211(D)(1) does not require that a pattern of conduct be proved by events from at least two different days. Arguably, a pattern of conduct could arise out of two or more events occurring on the same date, provided that there are sufficient intervals between them." One incident is insufficient to establish a "pattern of conduct."State v. Scruggs (2000), 136 Ohio App.3d 631, 634,737 N.E.2d 574, 576. See also, Dayton v. Davis (1999), 136 Ohio App.3d 26,735 N.E.2d 939.
 {¶ 20} "Mental distress" is defined as "any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that involves some temporary substantial incapacity" or "Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services". R.C. §2903.211(D)(2)(a) and (b). Expert testimony is not required to prove mental distress. State v. Smith (1998),126 Ohio App.3d 193, 709 N.E.2d 1245.
 {¶ 21} At the hearing the Appellee-Petitioner, Fran Tumblin, testified that she is a close family friend of the Appellant's family and has continued to help with caretaking at their mother's request after the children's mother and Appellant were divorced. Fran stated that on February 9, 2006, at the mother's request, she was babysitting the Appellant's children. On that date, Fran and Appellant attended Appellant's daughter's dance rehearsal at the Coshocton High School. After the rehearsal, Appellant hugged his daughter, discussed arraignments for the following evening, and watched her get into Fran's vehicle. Appellant understood that Fran was taking his daughter to her mother's home. Appellant became concerned when Fran did not head toward his ex-wife's house and deliberately followed her vehicle. It appears from the testimony that Fran was unaware that Appellant had not been informed of the mother's caretaking arrangements.
 {¶ 22} Upon arriving at the house, the Respondent demanded that his daughter and son gather their belongings. Respondent told Fran that he was not leaving her house without his children. Fran testified that the Respondent was very irate. Fran stated that she refused to allow the children to leave and told them to go in the house because "it wasn't dad's night". When Fran refused to relinquish the children, the Respondent replied that he wanted to know what she was going to do about it. Fran proceeded to call 911 for emergency help. Fran stated that she repeatedly asked appellant to leave her residence. She further testified that she feared physical harm because the Appellant got in her face and that she suffered emotional distress as a result of the Respondent's course of conduct.
 {¶ 23} Fran stated that there had been no prior incidents with the Appellant; that this rare instance was a continuous course of conduct from the high school to her home and front porch; and that the entire, single event, lasted approximately twenty to twenty-five minutes with at least eight to ten minutes of the time being spent traveling in the vehicles from the high school.
 {¶ 24} The responding officers testified that when they arrived at the residence the situation was tense but no one appeared to be upset. They stated that once Appellant was satisfied that his ex-wife had given permission for the children to be with Appellee, Appellant left in a cooperative and timely manner. Both officers testified that they did not believe charges were warranted. They further stated that they reviewed the case only after the Appellee personally called the Sheriff to complain that charges had not been filed.
 {¶ 25} In the case at bar, we find insufficient evidence to establish that the Appellant engaged in a "pattern of conduct" as defined in R.C. § 2903.211. Rather the evidence adduced at the hearing reveals a one-time incident caused by a heated argument over a misunderstanding regarding the caretaking of Appellant's children. The trial court did not find, and the record does not support, that the Appellant has, on more than one occasion, caused or threatened to cause Appellant physical harm or caused Appellee mental distress. Consequently, we find that Appellant did not engage in the crime of menacing by stalking.
 {¶ 26} Accordingly, based upon the foregoing reasons, we find the trial court's grant of a stalking civil protection order to be against the manifest weight of the evidence and hereby sustain Appellant's first assignment of error and reverse the trial court's judgment.
 {¶ 27} The judgment of the Coshocton County Court of Common Pleas is reversed.
By: Boggins, J. Gwin, P.J. and Hoffman, J. concurs.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Coshocton County Court of Common Pleas is reversed. Costs assessed to appellee.