[Cite as *Cook v. Bricker*, 2011-Ohio-4898.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| LOUIS J. COOK | : | W. Scott Gwin, P.J. |
|  | : | Sheila G. Farmer, J. |
| Petitioner-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 11-COA-007 |
|  | : |  |
|  | : |  |
| JOHN E. BRICKER | : | O P I N I O N |
| Respondent-Appellant |  |  |


CHARACTER OF PROCEEDING:          Civil Appeal from Ashland County
                                 Court of Common Pleas Case No.
                                 10-CPO-370

JUDGMENT:                        Reversed and Remanded

DATE OF JUDGMENT ENTRY:          September 22, 2011

APPEARANCES:

For Petitioner-Appellee                    For Respondent-Appellant

LOUIS COOK                                 ROBERT P. DESANTO
159 CR 530                                 432 Center Street
West Salem, Ohio  44287                    Ashland, Ohio  44805

*Edwards, J.*

{¶1} Appellant, John Bricker, appeals from the January 18, 2011, Judgment Entry of the Ashland County Court of Common Pleas.

STATEMENT OF THE FACTS AND CASE

{¶2} On August 20, 2010, appellee Louis Cook filed a Petition for Civil Stalking or Sexually Oriented Offense Protection Order pursuant to R.C. 2903.214 against appellant John Bricker. The petition indicated that appellee was seeking relief on behalf of himself and on behalf of his spouse, Elizabeth Cook, his son, Ross J.E. Cook, his father-in-law, Marshall Ross, Sr., his brother-in-law, Marshall Ross, Jr., and his mother-in-law, Elizabeth Ross. An ex parte Civil Stalking Protection Order was filed on the same date. A hearing on such motion was scheduled for August 30, 2010.

{¶3} At the hearing before a Magistrate, appellee Louis Cook testified that he resided at 159 County Road 530 in West Salem and that appellant was his neighbor. Appellee Cook testified that he was outside with his 3 year old son and his big Mastiff-type dog on August 19, 2010, when the dog ran into appellant's yard. When appellee went to retrieve his dog, appellant "was saying "Get that mother fuckin' bitch off my property.'" Transcript at 10. Appellee Cook testified that appellant said that he was going to shoot the dog between the eyes and called appellee's brother-in-law and father-in-law "mother fuckin' cock-suckers." Transcript at 11. Appellee Louis Cook testified that they had had instances with appellant in the past.

{¶4} According to appellee Cook, appellant threatened to shoot him and the dog if he did not get the dog off of his property within two minutes. Appellee Cook testified that this was the only time that he had had a problem with appellant. Appellee

Cook testified that appellant did not have a weapon on him. On cross-examination, appellee Cook testified that he asked appellant if appellant said that he was going to shoot him and that appellant said yes.

{¶5}    Marshall Ross, Sr., appellee Cook's father-in-law, testified that he was outside during the above incident and that he heard appellant tell appellee Cook to "get the son-of-a-bitch out of here" and that he was going to put a bullet between the dog's eyes. Transcript at 19. He testified that he owned the property at 159 County Road 530 and that he had lived there since December of 1998. When he moved in, appellant did not live next door. Marshall Ross, Sr. testified that he had three other incidents with appellant. During one incident on June 1, 2008, he was down in the back of his property cutting wood when appellant threatened to shoot him if he did not stay off of appellant's property. During the second incident, Marshall Ross, Sr. was again in the back of his property cutting wood when a piece of wood fell down by appellant's property. When he went over to pick it up, appellant again told him to stay off of his property or he would be shot.

{¶6}    According to Marshall Ross, Sr. the third incident occurred on the property line between their two properties. He testified that such incident occurred in August of 2009 or 2010. The following testimony was adduced at the hearing:

{¶7}    "THE COURT: When was it?

{¶8}    "THE WITNESS: That one was a - - 2010 or 2009 - - 8/19 it could have been of 2010, and that was the one where - - he run over my prop - - he kept knocking down my property stake, and I told him - - I went over - - I went over, I told him, 'Would you quit knocking down my property stake,' and he come flying towards me with his

mower, and I said, 'Just quit' - - and he said, 'Get off my damn property, I'll put a cap up your ass.' That's exactly what I was told." Transcript at 23-24.

{¶9}    At the hearing, Marshall Ross, Jr. testified that he was appellee Cook's brother-in-law. He testified that he did not witness the incident on August 19, 2010 and that appellant had never threatened to shoot him. Marshall Ross, Jr. testified that appellant came over and swore at him and yelled at him and threatened to kick his ass a few times. He further testified that he did not witness any of the times appellant threatened to shoot Marshall Ross, Sr. On cross-examination, he testified that he was not afraid of appellant.

{¶10} Appellant testified that he lived at 167 County Road 530 and had lived there since 1999. Appellant testified that appellee Cook had moved into the neighboring property about three weeks prior to the hearing. Appellant testified that, on August 19, 2010, he told appellee Cook the he had two minutes to remove the dog from appellant's property or the dog would be shot. According to appellant, when appellee Cook asked whether appellant threatened to shoot him, appellant indicated that he said the dog. He testified that he had no intention of shooting appellee Cook or the dog and that he did not have a gun on him.  Appellant denied threatening to shoot appellee Louis Cook.

{¶11} Appellant testified that he never intentionally knocked over the property line pin and that any disputes that he had with Marshall Ross, Sr. related to one or the other crossing the property line. He denied ever threatening to shoot Marshall Ross, Sr. but testified that one day he said "I'm going to bust my cap over your hind end" if Ross, Sr. did not get back to his side of the property. Transcript at 35.  Appellant testified that he had no intention of shooting anyone.

{¶12} On cross-examination, appellant testified that he owned 13 weapons and that he never threatened to shoot Marshall Ross, Sr. When questioned by the court about the August 19, 2010, incident, he testified that the dog was barking and growling at him and that he tried to shoo the dog away. Appellant testified that he was not afraid of the dog.

{¶13} On September 15, 2010, the Magistrate issued, and the trial court approved, a Civil Stalking Protection Order. The persons protected by the same were appellee Louis Cook, Elizabeth Cook, Ross J.E. Cook, Marshall Ross, Sr. and Marshall Ross, Jr. The court made the order effective until August 30, 2015. On September 27, 2010, appellant filed a Request for Findings of Facts and Conclusions of Law. An Amended Magistrate's Decision with Findings of Facts and Conclusions of Law was filed on October 27, 2010.

{¶14} On November 10, 2010, appellant filed objections to the Magistrate's Decision. In his objections, he reserved the right to amend or supplement his objections after the transcript of hearing was filed. Subsequently, after the transcript was filed, appellant, on January 3, 2011, filed additional objections. Appellant, in his objections, specifically alleged as follows:

{¶15} "I. COURT LACKED JURISDICTION TO HEAR A PETITION ON BEHALF OF FAMILY AND HOUSEHOLD MEMBERS OF PETITIONER.

{¶16} "II. THE COURT'S ORDER FOR CIVIL STALKING PROTECTION ORDER AND THE COURT'S FINDING THAT IT HAD JURISDICTION OF THE PARTIES AND THAT THE EVIDENCE 'ESTABLISHED A PATTERN OF CONDUCT WHICH CAUSED PETITIONER TO BELIEVE THAT RESPONDENT WOULD CAUSE

PHYSICAL HARM TO HIM OR ONE OF HIS FAMILY MEMBERS' IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} "III. THERE EXISTS NO EVIDENCE IN THE TRANSCRIPT TO ESTABLISH THAT MR. BRICKER ENGAGED IN A PATTERN OF CONDUCT TO KNOWINGLY CAUSE PETITIONER OR ANYONE ELSE TO BELIEVE THAT HE WOULD CAUSE PHYSICAL HARM TO THE OTHER PERSON.

{¶18} "IV. THE COURT'S CIVIL STALKING PROTECTION ORDER VIOLATES THE RESPONDENTS 2ND AMENDMENT CONSTITUTIONAL RIGHT TO BEAR ARMS WHERE THE EVIDENCE PRESENTED AT THE HEARING DOES NOT SUPPORT THE PORTION OF THE ORDER REQUIRING APPELLANT TO TURN OVER HIS FIREARMS TO LAW ENFORCEMENT AND TO NOT USE ALCOHOL."

{¶19} Pursuant to a Judgment Entry filed on January 18, 2011, the trial court overruled appellant's objections and adopted and approved the Magistrate's Decision and Judgment Entry entered on September 15, 2010 and the Amended Magistrate's Decision filed on October 27, 2010.

{¶20} Appellant now raises the following assignments of error on appeal:

{¶21} "I. THE TRIAL COURT LACKED JURISDICTION TO GRANT A CIVIL STALKING PROTECTION ORDER FILED FOR, ON BEHALF OF, AND GRANTED ON BEHALF OF PERSON NOT INCLUDED IN THE DEFINITION OF HOUSEHOLD OR FAMILY MEMBER AS FOUND IN R.C. 2903.214 AND R.C. 3113.31.

{¶22} "II. THE COURT ERRED IN CONCLUDING THAT THE CRIME OF MENACING R.C. 2903.211 DOES NOT INCLUDE AN ELEMENT OF CAUSATION NOR THAT THE HARM ALLEGEDLY CAUSED MUST BE REASONABLY

FORESEEABLE. SAID ERROR IS PREJUDICIAL ERROR WHERE THE CONDUCT OF THE RESPONDENT WAS ONLY ONE INCIDENT WITH THE PETITIONER AND ANY OTHER INCIDENT WAS WITH OTHER INDIVIDUALS AND REMOTE IN TIME AND THUS THE COURT'S ODER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶23}** "III. THE COURT'S ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THERE IS NO EVIDENCE. [SIC] PETITIONER BELIEVED RESPONDENT WOULD CAUSE PHYSICAL HARM TO PETITIONER OR ANYONE ELSE AND ANY THREATS MADE WERE ONLY CONDITIONAL THREATS.

**{¶24}** "IV. THE COURT'S CIVIL STALKING PROTECTION ORDER VIOLATES THE RESPONDENT'S 2ND AMENDMENT CONSTITUTIONAL RIGHT TO BEAR ARMS WHERE THE EVIDENCE PRESENTED AT THE HEARING DOES NOT SUPPORT THAT PORTION OF THE ORDER REQUIRING APPELLANT TO TURN OVER HIS FIREARMS TO LAW ENFORCEMENT AND TO NOT USE ALCOHOL."

I

**{¶25}** Appellant, in his first assignment of error, argues that the trial court lacked jurisdiction to enter a Civil Stalking Protection Order on behalf of Elizabeth Cook, Ross J.E. Cook, Marshall Ross, Sr. and Marshall Ross, Jr. because such persons are not included in the definition of household or family member as found in R.C. 2903.214 and R.C. 3113.31.

**{¶26}** R.C. 2903.214 states, in relevant part, as follows: "(B) The court has jurisdiction over all proceedings under this section. "(C) A person may seek relief under this section for the person, or any parent or <u>adult household member</u> may seek relief

under this section on behalf of any other family or <u>household member</u>, by filing a petition with the court." R.C. 2903.214 further states as follows: "(3) "Family or household member" has the same meaning as in section 3113.31 of the Revised Code." (Emphasis added). In turn, R.C. 3113.31(A) provides, in relevant part, as follows: "(3) "Family or household member" means any of the following:

**{¶27}** "(a) Any of the following who is residing with or has resided with the <u>respondent</u>:

**{¶28}** "(i) A spouse, a person living as a spouse, or a former spouse of the <u>respondent</u>;

**{¶29}** "(ii) A parent, a foster parent, or a child of the <u>respondent</u>, or another person related by consanguinity or affinity to the <u>respondent</u>;

**{¶30}** "(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the <u>respondent</u>, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the <u>respondent</u>."

**{¶31}** "(b) The natural parent of any child of whom the <u>respondent</u> is the other natural parent or is the putative other natural parent." (Emphasis added).

**{¶32}** There is no evidence in the record that Elizabeth Cook, Ross J.E. Cook, Marshall Ross, Sr. and Marshall Ross, Jr. were household or family members of appellant, who was the respondent. While appellee Louis Cook could seek a Civil Protection Order on his own behalf, he could, therefore, not seek one on their behalf. We concur with appellant, therefore, that the trial court had no jurisdiction to grant a Civil Stalking Protection Order on behalf of such individuals because they were not household or family members of appellant pursuant to R.C. 2903.214 and 3113.31.

**{¶33}** Appellant's first assignment of error, therefore, is sustained in part.

## II, III

**{¶34}** Appellant, in his second and third assignments of error, argues, in essence, that the trial court's order was against the manifest weight of the evidence.

**{¶35}** The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Olenik v. Huff,* Ashland App. No. 02-COA-058, 2003-Ohio-4621, at paragraph 21. Therefore, an appellate court should not reverse the decision of the trial court absent an abuse of discretion. In order to find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶36}** We further note that a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson,* 66 Ohio St.3d 610, 1993-Ohio-9, 614 N.E.2d 742. The underlying rationale for giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

{¶37} R.C. Section 2903.214 governs the filing of a petition for a civil stalking protection order. R.C. Section 2903.214(C) provides: "A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member by filing a petition with the court".

{¶38} To be entitled to a stalking civil protection order, the petitioner must show, by a preponderance of the evidence that the respondent engaged in menacing by stalking, a violation of R.C. Section 2903.211, against the person seeking the order. See *Tumblin v. Jackson,* Coshocton App. No. 06CA002, 2006-Ohio-3270 at paragraph 17.

{¶39} R.C. Section 2903.211(A), "menacing by stalking", states that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211 further provides as follows:

{¶40} "(D) As used in this section:

{¶41} "(1) "Pattern of conduct" means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents ...

{¶42} "R.C. 2903.211(D)(1) does not require that a pattern of conduct be proved by events from at least two different days. Arguably, a pattern of conduct could arise out of two or more events occurring on the same date, provided that there are sufficient intervals between them." *State v. Scruggs* (2000), 136 Ohio App.3d 631, 634, 737 N.E.2d 574, 576. One incident is insufficient to establish a "pattern of conduct." Id.

The statute does not define the term "closely related in time," but case law suggests the trier of fact should consider the evidence in the context of all circumstances of the case, *Middletown v. Jones,* 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003. The trier of fact is best able to decide on a case-by-case basis, *State v. Dario* (1995), 106 Ohio App.3d 232, 665 N.E.2d 759.

**{¶43}** R.C. 2903.211(D) further states, in relevant part, as follows:

**{¶44}** "(2) "Mental distress" means any of the following:

**{¶45}** "(a) Any mental illness or condition that involves some temporary substantial incapacity;

**{¶46}** "(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services."

**{¶47}** Appellant, in his second assignment of error, argues that there was insufficient evidence to establish that appellant engaged in a pattern of conduct while, in his third assignment of error, he argues that there was no evidence or testimony that appellee Louis Cook believed that appellant would cause physical harm to Louis Cook or someone else.

**{¶48}** The issue thus becomes whether or not appellant engaged in menacing by stalking in relation to appellee Louis Cook, the person seeking the order. In the case sub judice, we find insufficient evidence to establish that appellant engaged in a "pattern of conduct" as defined in R.C. § 2903.211. As is stated above, appellee Cook testified that the incident on August 19, 2010 was his only incident with appellant.  Testimony was adduced at the hearing that appellee Louis Cook was not even a neighbor of

appellant until several weeks prior to the hearing. The other three incidents testified to at the hearing involved appellant and Marshall Ross, Sr.

**{¶49}** For the foregoing reasons, we find the trial court's grant of a stalking civil protection order to be against the manifest weight of the evidence and hereby sustain appellant's second assignment of error. Appellant's third assignment of error is, therefore, moot.

IV

**{¶50}** Appellant, in his fourth assignment of error, argues that the trial court violated his constitutional right to bear arms when, in its Civil Stalking Protection Order, it prohibited appellant from possessing, using, carrying or obtaining any deadly weapon and ordered appellant to turn over all deadly weapons in his possession to law enforcement.

**{¶51}** Based on our disposition of appellant's second assignment of error, appellant's fourth assignment of error is moot.

{¶52} Accordingly, the judgment of the Ashland County Court of Common Pleas is reversed and this matter is remanded for further proceedings.


By: Edwards, J.

Gwin, P.J. and

Farmer, J. concur


_____


_____


_____

                                            JUDGES

JAE/d0810

[Cite as *Cook v. Bricker*, 2011-Ohio-4898.]

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| LOUIS J. COOK | : | |
| | : | |
| Petitioner-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JOHN E. BRICKER | : | |
| | : | |
| Respondent-Appellant | : | CASE NO. 11-COA-007 |


For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Ashland County Court of Common Pleas is reversed and remanded to the trial court for further proceedings.  Costs assessed to appellee.


_____


_____


_____

JUDGES