[Cite as *Theibert v. Anderson*, 2017-Ohio-1029.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| KYLE M. THEIBERT | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Petitioner-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| KEVIN M. ANDERSON | : | Case No. 16CA00013 |
| | : | |
| Respondent-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Case No. 16ST04-0110


JUDGMENT:                       Affirmed


DATE OF JUDGMENT:               March 20, 2017


APPEARANCES:

For Petitioner-Appellee                 For Respondent-Appellant

P. ROBERT BROEREN, JR.                  SCOTT ALLAN PULLINS
5 North Gay Street                      110 East Gambier Street
Suite 222                               Mount Vernon, OH  43050
Mount Vernon, OH  43050

*Wise, Earle, J.*

{¶1} Respondent-Appellant, Kevin Anderson, appeals the May 18, 2016 order of the Court of Common Pleas of Knox County, Ohio, granting Petitioner-Appellee, Kyle Theibert, a civil stalking protection order.

FACTS AND PROCEDURAL HISTORY

{¶2} On April 25, 2016, appellee, a Corporal in the Mount Vernon Police Department, filed a motion for a civil stalking protection order on behalf of himself, his wife, and his three children, against appellant. Appellee claimed appellant "contacted BCI and made threats/comments regarding homicide towards Police Officers." He explained he was currently named in a lawsuit filed by appellant, and appellant had stopped and video recorded appellee and his children playing at the park. Appellee and his children were alone at the park, and he was off-duty. Appellee stated appellant was known to be armed.

{¶3} On same date, the trial court issued an ex parte protection order pursuant to R.C. 2903.214, and scheduled a hearing. A hearing was held on May 16, 2016. By order of protection filed May 18, 2016, the trial court issued a civil stalking protection order against appellant for three years.

{¶4} Appellant filed an appeal, and this court issued a limited remand to the trial court to rule on a Civ.R. 60(B) motion to vacate the civil stalking protection appellant had filed on August 26, 2016. By judgment entry filed October 20, 2016, the trial court denied the motion.

{¶5} This matter is now before this court for consideration. Assignments of error are as follows:

I

{¶6} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT GRANTED THE CIVIL PROTECTION ORDER AGAINST APPELLANT."

II

{¶7} "THE TRIAL COURT'S ORDER IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE EVIDENCE IN THIS CASE DOES NOT WARRANT THE ISSUANCE OF A CIVIL PROTECTION ORDER."

III

{¶8} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DECLINED TO VACATE ITS DECISION DESPITE THE FACT THAT PETITIONER WAS REPRESENTED BY THE MOUNT VERNON CITY LAW DIRECTOR WITHOUT THE CONSENT OF MOUNT VERNON CITY COUNCIL."

IV

{¶9} "THE TRIAL COURT ERRED WHEN IT INCLUDED THE SPOUSE OF THE PETITIONER AS A PROTECTED PARTY BECAUSE THERE WAS NO EVIDENCE THAT RESPONDENT HAS EVERY BEEN NEAR HER."

I, II, IV

{¶10} Appellant claims the trial court abused its discretion in issuing the civil stalking protection order, as the order is against the manifest weight of the evidence. Appellant also claims the trial court erred in including appellee's wife in the order. We disagree.

{¶11} The decision whether to grant a civil stalking protection order lies within a trial court's sound discretion. *Bucksbaum v. Mitchell,* 5th Dist. Richland No. 2003-CA-

0070, 2004-Ohio-2233. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶12} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also, State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997); *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21.

{¶13} R.C. 2903.214 governs protection orders. Subsection (C)(1) states the following:

> (C) A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member, by filing a petition with the court. The petition shall contain or state all of the following:
>
> (1) An allegation that the respondent is eighteen years of age or older and engaged in a violation of section 2903.211 of the Revised Code against

the person to be protected by the protection order or committed a sexually oriented offense against the person to be protected by the protection order, including a description of the nature and extent of the violation.

{¶14} "To be entitled to a civil stalking protection order, a petitioner must show, by a preponderance of the evidence that the respondent engaged in menacing by stalking a violation of R.C. 2903.211, against the person seeking the order" or a family or household member. *Tumblin v. Jackson,* 5th Dist. Coshocton No. 06CA002, 2006-Ohio-3270, ¶ 17. "Preponderance of the evidence" is "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not." *Black's Law Dictionary* 1182 (6th Ed.1990).

{¶15} R.C. 2903.211, menacing by stalking, states the following at subsection (A)(1):

No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's mental distress, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or

other organization that employs the other person or to which the other person belongs.

{¶16} "Pattern of conduct" is defined in subsection (D)(1) as: "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." The statute does not define "closely related in time." As explained by our brethren from the Twelfth District in *Middletown v. Jones,* 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 10 (12th Dist.):

[W]hether the incidents in question were "closely related in time" should be resolved by the trier of fact "considering the evidence in the context of all the circumstances of the case." *State v. Honeycutt,* Montgomery App. No. 19004, 2002-Ohio-3490, 2002 WL 1438648, ¶ 26, citing *State v. Dario* (1995), 106 Ohio App.3d 232, 238, 665 N.E.2d 759. In determining what constitutes a pattern of conduct for purposes of R.C. 2903.211(D)(1), courts must take every action into consideration even if, as appellant argues, "some of the person's actions may not, in isolation, seem particularly threatening." *Guthrie v. Long,* Franklin App. No. 04AP-913, 2005-Ohio-1541, 2005 WL 737402, ¶ 12; *Miller v. Francisco,* Lake App. No. 2002-L-097, 2003-Ohio-1978, 2003 WL 1904066, ¶ 11.

{¶17} R.C. 2903.211(D)(2) defines "mental distress" as:

(a) Any mental illness or condition that involves some temporary substantial incapacity;

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

{¶18} As explained by the *Middletown* court at ¶ 7:

However, whether treatment is sought is not determinative; rather, it is the duty of the trier of fact to determine whether a victim suffered mental distress as a result of the offender's actions. *State v. Rucker* (2002), Butler App. No. CA2001-04-076, 2002 WL 83731. In making this determination, the trial court "may rely on its knowledge and experience in determining whether mental distress has been caused." *Smith v. Wunsch,* 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 18.

{¶19} Appellant argues evidence or testimony was not presented to show he knowingly caused appellee physical harm or mental distress.

{¶20} Appellee filed his petition for a civil stalking protection order on April 25, 2016. Appellee alleged appellant "contacted BCI and made threats/comments regarding homicide towards Police Officers." He explained he was currently named in a lawsuit filed by appellant, and appellant had stopped and video recorded appellee and his

children playing at the park.  Appellee and his children were alone at the park, and he was off-duty.  Appellee stated appellant was known to be armed.

{¶21}  In granting appellee the civil stalking protection order, the trial court found: "The Respondent does pose as a potential threat to the Petitioner, and the Petitioner's family."  *See,* Civil Stalking Protection Order filed May 18, 2016.  The trial court further checked the box that states the following:

> The Court finds by clear and convincing evidence that 1) the Petitioner or Petitioner's family or household members reasonably believed the Respondent's conduct before the filing of the Petition endangered the health, welfare, or safety of the Petitioner or Petitioner's family or household members; 2) the Respondent presents a continuing danger to the Petitioner or Petitioner's family or household members; and 3) the following orders are equitable, fair, and necessary to protect the persons experiencing a continuing danger to the Petitioner or Petitioner's family or household members named in this Order.

{¶22}  During the hearing held on May 16, 2016, appellant chose to represent himself.  T. at 2, 4.  Appellee was represented by the City Law Director.  T. at 2.

{¶23}  Appellee testified he knew appellant from coming in contact with him several times in his duties as a patrol officer, and in fact, was named as a defendant in a civil lawsuit filed by appellant.  T. at 6, 27.  The lawsuit stemmed from appellee having arrested appellant for the offense of aggravated menacing which was later dismissed.  T. at 26.

{¶24} Appellee stated as part of his job duties, he received a BCI Division of Criminal Intelligence Unit alert issued to Knox County law enforcement officers dated February 12, 2014, informing them that appellant "had made some general threats against law enforcement officers and people in general." T. at 8, 27; Petitioner's Exhibit 1. As a result, appellant was considered a "two-person call, meaning two officers were to respond to anything involving him due to the threats." T. at 9. The alert is sent out to law enforcement "to let you know to use caution with this person indefinitely." T. at 51.

{¶25} Appellee testified on April 24, 2016, at approximately 7:40 p.m., he and his three children were playing at a park when appellant "pulled into the park, pulled his vehicle sideways, and began videotaping me and my children playing at the baseball field" for about half an hour. T. at 10-12. Appellee stated he was intimidated and scared for his kids, ages 9, 6, and 3. T. at 12. They were alone at the park, and appellee was unarmed. *Id.* Appellant's actions of being there observing and videotaping prevented appellee from going home when he wanted to. T. at 13. Appellee was concerned about the prior threats, and "he already knew where I was at the baseball field and has a habit of following police officers. My vehicle was there. I did not want to be followed to my home." T. at 14.

{¶26} Following this incident, on May 8, 2016, appellee was again at the park with one child, when appellant drove by, "slowed down to approximately 10 and had his hand on the steering wheel and was staring at me the entire time he drove down the road." *Id.*

{¶27} Appellee explained he asked for the civil stalking protection order "[b]ecause I fear for my safety and my children's safety, my family's safety that while off duty, I'm being targeted now." T. at 15.

{¶28} On cross-examination, appellee stated appellant's behavior alarmed him because of "[y]our proximity to me and my children also while holding a video camera so you could - - I'm familiar with video cameras and know how well they zoom that now you would have a possible view of what my children look like." T. at 23. Because of the BCI alert and the civil lawsuit, appellee "became nervous for my family that something could happen so much so that I've shown my family pictures of you. My wife's taken a concealed carry class." T. at 28. Appellee explained, "I feel you're a threat, and I don't feel I know exactly what you are capable of, but your proximity to me made me nervous for the safety of my children, so I did not want to walk towards you." T. at 35.

{¶29} Mount Vernon Police Officer Justin Trowbridge corroborated the fact that appellant was seated in his vehicle at the park during the April incident in question, in a position where appellant "could see over the whole entire diamond and monitor Kyle and his children." T. at 43-45.

{¶30} Appellant testified regarding the April incident, he had pulled into the park to retrieve a voicemail and make a cell phone call. T. at 55-56. He was at the park for about fourteen minutes before leaving the area and going home. T. at 56. Appellant stated, "I honestly feel that I was no threat, never got out of my vehicle, and under oath, under penalty of perjury, I am going to state that I did not take any pictures, videos of Kyle or his children playing at the ball diamond. I was on a phone call, and I also had more important things to do than to worry about what he's doing." T. at 57.

{¶31} On cross-examination, appellant admitted he received the voicemail message and because he was driving a truck pulling a trailer, he had driven past the park, turned around in a church parking lot, and returned to the park because the parking lot

"was large enough to equip my truck and trailer."  T. at 56, 61, 63.  Appellant explained he did not remain in the church parking lot to retrieve the message because of a "No Trespassing" sign.  T. at 62.  Appellant admitted to knowing where appellee lives, and admitted to giving a false address to the Bureau of Motor Vehicles.  T. at 64-66.  Appellant presented the trial court with his phone records for the date and time of the incident.  T. at 69, 71; Respondent's Exhibit C.

{¶32}  At the conclusion of the hearing, the trial court acknowledged "it comes back down to a matter of credibility."  T. at 74.  The trial court stated, "I am going to come down on the side of the Petitioner here.  And I will tell you that I think if this was just between you or Mr. Theibert, I think he can handle it.***But you got the kids involved.  That's going too far."  *Id.*  The trial court explained: "That's where we draw the line, when you start involving the families.  These guys got a job to do.  They will take what they have coming.  You leave their families out of it."  T. at 74-75.

{¶33}  We note the credibility of the witnesses is an issue for the trier of fact, as the trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page."  *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 552 N.E.2d 1159, 1997-Ohio-260; *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990).

{¶34}  Given appellee's testimony and the exhibits presented, including the BCI alert, we find sufficient evidence, in the context of all the circumstances of the case, to establish that appellant engaged in a pattern of conduct causing appellee to fear for his safety and the safety of his family i.e., showing appellant's picture to his family, appellee's

wife taking a concealed carry class.  Given that appellant knows where appellee lives, we do not find any error in including appellee's wife in the order.

{¶35}  Upon review, we find the trial court did not abuse its discretion in issuing the civil stalking protection order, and find the trial court did not lose its way.

{¶36}  Assignments of Error I, II, and IV are denied.

III

{¶37}  Appellant claims the trial court erred and abused its discretion when it denied his Civ.R. 60(B) motion to vacate.  We disagree.

{¶38}  A motion for relief from judgment under Civ.R. 60(B) lies in a trial court's sound discretion.  *Griffey v. Rajan,* 33 Ohio St.3d 75, 514 N.E.2d 1122 (1987); *Blakemore, supra.*  Appellant based his Civ.R. 60(B) motion on "mistake, inadvertence, surprise or excusable neglect," "fraud***, misrepresentation or other misconduct of an adverse party," and "any other reason justifying relief from the judgment."  Civ.R. 60(B)(1), (3), and (5).  In *GTE Automatic Electric Inc. v. ARC Industries, Inc.,* 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus, the Supreme Court of Ohio held the following:

> To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or

(3), not more than one year after the judgment, order or proceeding was entered or taken.

{¶39} In his motion to vacate filed August 26, 2016, appellant first argued the civil stalking protection order was issued under an incorrect statute by mistake. Appellant argued the order should have been issued under R.C. 2903.215. Said statute pertains to protection orders "on behalf of corporation, association, or other organization." As correctly noted by the trial court in its October 20, 2016 judgment entry denying appellant's motion, the order "was granted pursuant to R.C. 2903.214 to an individual and his family members. R.C. 2903.215 does not apply to these circumstances and the Court did not issue the Order under an incorrect statute."

{¶40} Secondly, appellant argued the order was issued due to the misconduct of appellee's trial counsel. In his motion at 5, appellant argued the following:

Petitioner's counsel cannot have it both ways. If Respondent was a legitimate threat under those circumstances, then Petitioner's counsel should have requested a protection order on behalf of the Mount Vernon Police Department. As clearly shown earlier, he could have done so without council's additional approval. In the alternative, Petitioner's counsel should have drafted and presented to city council a resolution authorizing him to represent Petitioner and his family in this matter.

Petitioner's council did neither.

{¶41} As the trial court noted in its judgment entry: "Respondent has alleged no set of facts that this Court finds constitutes misconduct by Petitioner's counsel." We agree with this determination.

{¶42} As for the "catch-all" provision under Civ.R. 60(B)(5), appellant argued at 5: "The undersigned counsel was unable to find a single case where a City Law Director has represented a City Police Officer and his family in attempting to obtain a civil protection order. This is clearly an extraordinary and highly unusual situation." Appellant did not object to appellee's counsel during the hearing, and did not cite to any facts or prejudice justifying relief from judgment under this subsection. Appellant cannot now argue he was "rather inarticulate and otherwise difficult to understand" in facing off against the "Mount Vernon City Law Director" when in fact appellant chose to represent himself. *See,* August 26, 2016 Motion to Vacate at 5-6.

{¶43} While appellant filed his Civ.R. 60(B) motion within a reasonable time, he failed to meet the additional requirements under *GTE Automatic, supra.*

{¶44} Upon review, we find the trial court did not abuse its discretion in denying appellant's motion to vacate the civil stalking protection order.

{¶45} Assignment of Error III is denied.

{¶46} The judgment of the Court of Common Pleas of Knox County, Ohio is hereby affirmed.

By Wise, Earle, J.

Delaney, P.J. and

Wise, John, J. concur.


EEW/sg 31