[Cite as *Wade v. Wade*, 2024-Ohio-3136.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LILLIAN ROSALIE WADE | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Petitioner-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. CT2024-0005 |
| SHERRI WADE | |
| Respondent-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Muskingum County Court of Common Pleas, Domestic Relations Division, Case No. DH2023-0598 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | August 15, 2024 |
| APPEARANCES: | |

For Petitioner-Appellee

LILLIAN WADE
912 Arch Street
Zanesville, Ohio 43701

For Respondent-Appellant

BRIAN W. BENBOW
Benbow Law Offices
803 Taylor Street
Zanesville, Ohio 43701

*Hoffman, J.*

**{¶1}** Respondent-appellant Sherri Wade appeals the December 14, 2023 Order of Protection issued by the Muskingum County Court of Common Pleas, which granted petitioner-appellee Lillian Rosalie Wade a civil stalking protection order ("CSPO") against her.

STATEMENT OF THE CASE AND FACTS

**{¶2}** On September 18, 2023, Appellee filed a Petition for Civil Stalking Protection Order against Appellant.  The trial court issued an ex parte CSPO on the same day.  The trial court conducted a full hearing on Appellee's petition on December 13, 2023.

**{¶3}** Appellee explained Appellant and her son ("Husband") are married, but separated. On August 26, 2023, after Appellant "kicked him out," Husband went to Appellee's house to, according to Appellee, "get away from her so she wouldn't bother him." Transcript of December 13, 2023 Hearing at p. 9. Appellee stated she received calls "all night long" from Appellant. *Id.* Appellant threatened to kick in the doors to Appellee's home.

**{¶4}** Appellee recalled the tires on Husband's truck were slashed while the vehicle was parked on the street in front of Appellee's residence. Appellant later left a voicemail message on Husband's phone, saying she would pay for the tire repairs if he returned her call. Appellee also recounted a time when a City Code Enforcement officer appeared at her home and required her to move Husband's truck to the rear of the property.  Appellee firmly believed Appellant contacted City Code Enforcement, explaining the officer showed Appellee the phone number of the complaining party, which was Appellant's phone number.  Appellee contacted law enforcement after Appellant, using a key fob, repeatedly set off the alarm on Husband's truck throughout the late hours

of the night. The incident was captured on a neighbor's security camera. Neither Appellee nor her niece were able to acquire a copy of the video footage from the security camera or obtain a copy of the police reports.

**{¶5}** Appellee testified police appeared at her home at Appellant's request and asked Appellee to return Appellant's garage door opener. After dark on the same day, Appellant came to Appellee's home, knocked on the front and back doors, knocked on the basement windows, tried to enter the residence, and repeatedly rang the doorbell. Appellee contacted police. A neighbor observed someone running to the back of the residence when officers arrived.

**{¶6}** Appellee acknowledged she suffered from depression and had been hospitalized in 2002, as a result. Appellee noted Appellant is aware of her mental health issues. Appellee also suffers from pleurisy and other physical health issues. Appellee stated she is struggling with depression again and is on medication. On cross-examination, Appellee explained, "When [Appellant] started all that trouble with [Husband], I went into deep depression and had the doctor." Tr. at p. 25. Appellee added her niece is now her caretaker, "taking care of my affairs 'cause I'm not able to right now." *Id.*

**{¶7}** Linda Suttles, Appellee's niece, testified Appellee contacted her on September 13 or 14, 2023, asking for help. Suttles recalled Appellee was distraught after the incidents with Appellant, and she felt unsafe after Husband moved out of her residence. Suttles explained she has observed Appellee over the years and Appellee's mental health was stable prior to the incidents involving Appellant. Suttles described Appellee as an emotional wreck, on the verge of a nervous breakdown, afraid to leave

her home due to fear Appellant or her family members would harm her, and unable to care for herself. Suttles drives Appellee to her medical appointments and wherever else Appellee needs to go. Suttles added Appellant found out where she lived and appeared at Suttles' residence, looking for Husband. Suttles indicated she had never met Appellant prior to this contact.

{¶8}    Appellant testified she called Appellee's residence on three occasions and left voicemail messages, but denied making any threats towards Appellee or harassing her in any way. Appellant also admitted knocking on the doors and windows of Appellee's residence as well as sending police to the residence to retrieve a garage door opener. Appellant acknowledged she was aware of Appellee's history of depression and other health issues.

{¶9}    On December 13, 2023, the trial court issued a two-year CSPO against Appellant.

{¶10} It is from this order Appellant appeals, raising as her sole assignment of error:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ISSUED THE CIVIL STALKING PROTECTION ORDER ("CSPO") AGAINST APPELLANT. THE TRIAL COURT'S CSPO IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. APPELLEE PRODUCED NO EVIDENCE THAT APPELLANT ENGAGED IN AN FACE-TO-FACE CONTACT CREATING A "PATTERN OF CONDUCT" CLOSELY RELATED IN TIME" [SIC] OR THAT APPELLANT CAUSED "MENTAL

DISTRESS" OR THAT APPELLANT THREATENED APPELLEE WITH IMMINENT "PHYSICAL HARM."

*Standard of Review*

**{¶11}** The decision whether to grant a civil protection order lies within the sound discretion of the trial court. *Singhaus v. Zumbar*, 2015-Ohio-4755 (5th Dist.). An abuse of discretion is where the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶12}** A reviewing court must not substitute its judgment for that of the trial court where there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Eastley v. Volkman*, 2012-Ohio-2179. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 189 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

I

**{¶13}** In her first assignment of error, Appellant argues trial court abused its discretion in granting a CPO.

**{¶14}** R.C. 2903.214 governs the issuance of protection orders and provides, in pertinent part:

(C) A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on

behalf of any other family or household member, by filing a petition with the court. The petition shall contain or state all of the following:

(1) An allegation that the respondent is eighteen years of age or older and engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order or committed a sexually oriented offense against the person to be protected by the protection order, including a description of the nature and extent of the violation.

R.C. 2903.214(C)(1).

**{¶15}** "To be entitled to a civil stalking protection order, a petitioner must show, by a preponderance of the evidence that the respondent engaged in menacing by stalking a violation of R.C. 2903.211, against the person seeking the order." *Tumblin v. Jackson,* 2006-Ohio-3270, ¶ 17 (5th Dist.). "Preponderance of the evidence means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of a contested fact is more probable than its nonexistence." *State v. Stumpf*, 32 Ohio St.3d 95, 102 (1987). Therefore, "[w]hen assessing whether a civil stalking protection order should have been issued, the reviewing court must determine whether there was sufficient credible evidence to prove by a preponderance of the evidence that the petitioner was entitled to relief." *Fouch v. Pennington*, 2012-Ohio-3536, ¶ 9 (12th Dist.). This standard is, in essence, a review as to whether the issuance of the civil stalking protection order was against the manifest weight of the evidence. *McBride v. McBride*, 2012-Ohio-2146, ¶ 10 (12th Dist.).

**{¶16}** R.C. 2903.211(A)(1) proscribes "menacing by stalking" and provides:

(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person.

{¶17} As used in R.C. 2903.211, " 'pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). The statute, however, does not define "closely related in time." Accordingly, "the temporal period within which the two or more actions or incidents must occur * * * [is a] matter to be determined by the trier of fact on a case-by-case basis." *Ellet v. Falk,* 2010–Ohio–6219, ¶ 22 (6th Dist.).

{¶18} R.C. 2903.211(D)(2) defines "mental distress" as:

(a) Any mental illness or condition that involves some temporary substantial incapacity;

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

R.C. 2903.211(D)(2).

**{¶19}** The statute, however, "does not require that the victim actually experience mental distress, but only that the victim believes the stalker would cause mental distress or physical harm." *Bloom v. Macbeth,* 2008–Ohio–4564, ¶ 11 (5th Dist.), citing *State v. Horsley,* 2006–Ohio–1208 (10th Dist.).[1]  Moreover, the testimony of the victim herself as to her fear is sufficient to establish mental distress. *Horsley* at ¶ 48. An "[i]ncapacity [from a "mental illness"] is substantial if it has a significant impact upon the victim's daily life, such as causing a change in one's routine." (Citation omitted).  *A.V. v. McNichols*, 2019-Ohio-2180, ¶ 22  (4th Dist.).

**{¶20}** Appellant contends Appellee failed to establish by a preponderance of the evidence she (Appellant) engaged in a pattern of conduct and Appellee suffered mental distress as a result. We disagree.

**{¶21}** The testimony at the hearing revealed a number of incidents which establish Appellant engaged in a "pattern of conduct."  Appellee testified, after Appellant and Husband separated on August 26, 2023, Appellant called Appellee's home "all night long." During these calls, Appellant threatened to kick in the doors to Appellee's home.  Appellee recalled another incident wherein Appellant slashed the tires on Husband's truck while the vehicle was parked on the street in front of Appellee's residence.  In a voicemail, Appellant told Husband she would pay to have the tires repaired if Husband returned her call.  Another time, a City Code Enforcement officer appeared at Appellee's home after receiving a complaint about Husband's truck being parked on the street in front of the

---

[1] This author concurred in *Bloom*, noting I was "not persuaded * * * the statute does not require the victim to actually experience mental distress." *Bloom*, at ¶ 15.  Since then, I have disagreed with the majority of the Court and concluded the statute requires actual mental distress.  See, concurrence, *Z.J. v. R.M.*, 2023-Ohio-3552, ¶ 42 (5th Dist.).  However, I find the evidence in this case was sufficient to establish Appellee, the victim, suffered actual mental distress; therefore, the result is the same.

residence.  The phone number of the complaining party belonged to Appellant.  Late one evening, Appellee had to contact law enforcement because Appellant, using a key fob, was continually setting off the alarm on Husband's truck. Appellee also testified police appeared at her home at Appellant's request and asked Appellee to return Appellant's garage door opener.  After dark on the same day, Appellant came to Appellee's home, knocked on the front and back doors, knocked on the basement windows, tried to enter the residence, and repeatedly rang the doorbell. Appellee contacted police.  A neighbor observed someone running to the back of the residence when officers arrived.

**{¶22}** Appellant acknowledged she called Appellee's residence on three occasions and left voicemail messages.  Appellant denied threatening Appellee or harassing her in any way.  Appellant also admitted knocking on the doors and windows of Appellee's residence.  Appellant further conceded she sent police to Appellee's residence to retrieve a garage door opener.

**{¶23}** The testimony further established Appellant's "pattern of conduct" caused Appellee to suffer mental distress.  Appellee acknowledged she struggled with depression and was hospitalized in 2002, as a result.  Appellant conceded she was aware of her mental health issues. Appellee also suffers from physical health issues.  Appellee stated she was stable, but since the incidents with Appellant, she is struggling with depression again and is on medication.  Appellee's niece, Linda Suttles, currently takes care of Appellee's affairs " 'cause I'm not able to right now." Tr. at p. 25.

**{¶24}** Suttles testified Appellee contacted her on September 13 or 14, 2023, asking for help.  Suttles noted Appellee was distraught after the incidents with Appellant, adding Appellee felt unsafe after Husband moved out of her residence.  Suttles explained

she has observed Appellee over the years and Appellee's mental health was stable prior to the incidents involving Appellant. Suttles described Appellee as an emotional wreck, on the verge of a nervous breakdown, afraid to leave her home due to fear Appellant or her family members would harm her, and unable to care for herself.

{¶25} Appellant asserts Appellee's testimony regarding her mental distress was not objectively reasonable. "The plain language of the statute simply refers to conduct that will affect 'the other person.' " *Lane v. Brewster*, 2012-Ohio-1290, ¶ 20 (12th Dist.), citing R.C. 2903.211(A)(1). The language in R.C. 2903.22(A)(1) "does not require a court to determine the respondent's effect on the 'reasonable' person, [but] *only those specifically involved.*" (Emphasis added.) *Id.* Therefore, when determining whether the petitioner is entitled to the issuance of a civil stalking protection order against the respondent pursuant to R.C. 2903.214(C)(1), "*the focus is on the petitioner's fear*, not that of an objective, reasonable person." (Emphasis added.) *Fortney v. Willhoite*, 2012-Ohio-3024, ¶ 43 (11th Dist.). "The statute does not require that the victim actually experience mental distress, but only that the victim believes the stalker would cause mental distress or physical harm." (Citation omitted.) *Bloom v. Macbeth*, 2008-Ohio-4564, ¶ 11 (5th Dist.).[2]

{¶26} Based upon the foregoing, we find Appellee established by a preponderance of the evidence Appellant engaged in menacing by stalking. We further find the trial court did not abuse its discretion in issuing a CSPO against Appellant.

{¶27} Appellant's sole assignment of error is overruled.

---

[2] See footnote 1, ¶ 19, supra.

**{¶28}** The judgment of the Muskingum County Court of Common Pleas, Domestic Relations Division, is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Baldwin, J. concur