[Cite as *A.V. v. McNichols*, 2019-Ohio-2180.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| A.V., | : | Case No. 18CA17 |
| Petitioner-Appellee, | : | |
| v. | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| STEVEN R. McNICHOLS, | : | |
| Respondent-Appellant. | : | **RELEASED: 05/31/2019** |

<u>APPEARANCES</u>:

James R. Kingsley, Circleville, Ohio, for appellant.

Courtenay Balvin, Southeastern Ohio Legal Services, Chillicothe, Ohio, for appellee.

Hess, J.

{¶1}   A.V. obtained a civil stalking protection order ("CPO") against Steven R. McNichols from the Hocking County Court of Common Pleas. McNichols challenges the order on appeal.

{¶2}   McNichols argues that the trial court committed prejudicial error when it issued a CPO because (1) the trial court's finding that he caused mental distress was contrary to law and against the manifest weight of the evidence, and (2) the applicable statute requires him to be a family member and the trial court's finding that he was "living as a spouse" was contrary to law and against the manifest weight of the evidence. We find that the record contains ample evidence that McNichols knowingly caused A.V. emotional distress, fear, anxiety and concern for her safety. There is sufficient evidence to support the conclusion that A.V. suffered mental distress as a result of McNichols's persistent and unwelcomed behavior.

{¶3} Contrary to McNichols's assertions, the statutes governing civil protection orders for menacing by stalking do not require the victim and offender to be "family or household members" or "living as a spouse" and the trial court did not find that A.V. was "living as a spouse." To obtain a civil stalking protection order, petitioner must show the offender engaged in a pattern of conduct that knowingly caused another to believe the offender will cause physical harm or mental distress. There is no requirement that the victim and offender be family or household members. And, contrary to McNichols's representation, the trial court held that the domestic violence protection order statute has no relevance to the case and a finding that A.V. was living as a spouse would have no impact on the case. A.V.'s case was governed by the civil stalking protection order statutes. We overrule McNichols's sole assignment of error and affirm the trial court's judgment.

## I. FACTS & PROCEDURAL HISTORY

{¶4} A.V. filed a petition for a civil stalking protection order against McNichols in June 2018 under R.C. 2903.214 and R.C. 2903.211. The trial court issued a temporary ex parte CPO, held an evidentiary hearing, and granted A.V. a CPO against McNichols, effective until June 29, 2019. At the hearing the trial court heard the following evidence.

{¶5} A.V. and McNichols were involved in a romantic relationship from August 2014 until the fall of 2017 and lived together for six months from approximately September 2014 to February 2015. During that time they broke up and reunited several times.

{¶6} As a child A.V. had been sexually abused by several male relatives and McNichols was aware of the abuse. McNichols used knowledge of the sexual abuse to

inflict mental distress on her. McNichols repeatedly called A.V. a "whore" for wearing certain clothes or makeup. A.V. testified that she attended a relative's funeral and McNichols told her to be home by 2:00 PM. When she arrived a few minutes late, McNichols tormented her with accusations that the reason she was late was so that her "uncles can take turns with me sexually." On another occasion McNichols told A.V. that if he saw her being raped by six guys, he would not help her. Another time McNichols told A.V. to "go find your dad and grandpa so they can go rape you." McNichols told A.V. that if she ever got involved with anybody else, he would tell that person that A.V. liked anal sex because he knew that her grandfather had raped her in that manner as a child. A.V. testified that when McNichols made these remarks, she had tearful breakdowns and his response would be "go ahead and cry those crocodile tears."

{¶7}   During their relationship, A.V. had to quit a job because McNichols accused her of having an affair at work.  McNichols would not allow A.V. to see her family members and threatened to "throw all [A.V.'s] stuff out" if she visited her brother. A.V. testified that McNichols would follow A.V. in his car and on one of those occasions he circled his car around her four times as she was getting gasoline. A.V. testified that there were so many instances of McNichols inflicting emotional distress that she could not recall them all, "It was constant." A.V. told McNichols many times to leave her alone and that she only wanted "to be friends, nothing more."  But McNichols told her, "If we can't be together, I will get you evicted" from her home. A.V. told McNichols that if he would not leave her alone, she would get a restraining order. McNichols replied, "It's just a piece of paper. I can walk through it." A.V. testified that there were times McNichols drove by her house and revved his engine.  A.V. did not want McNichols to come onto

her property. She complained to her landlord, who was McNichols's uncle, about McNichols and her landlord advised her to get a restraining order.

**{¶8}** A.V. acknowledged that she had been to McNichols's house several times in June 2018. She testified that her dog had puppies and McNichols had the puppies at his house and encouraged her to visit the puppies. She also went to McNichols's house to return property that belonged to him. A.V. stated that if she did not go to his house, then McNichols would come to her house. If she did not answer the door, he would shout through the window. A.V. testified that by going to McNichols's house, she was "trying to keep peace."

**{¶9}** A.V. filed her petition for a civil stalking protective order after several incidents in June 2018.  On June 26, 2018 McNichols went to A.V.'s sister's house looking for A.V.. Her sister texted her that McNichols was looking for her. A.V. testified that she called the Hocking County Sheriff's Office, but the dispatcher instructed A.V. to seek a protective order. When A.V. returned home that evening McNichols was in her driveway. She asked him to leave but he refused and said he would sleep in the driveway. Another neighbor arrived, and an altercation broke out. Several Hocking County Sheriff's Department deputies arrived, and A.V. made an incident report against McNichols with one of the deputies.

**{¶10}** In mid-June, McNichols went to A.V.'s residence while she was at work and left a planter with a flower on her porch with a plaque that read, "You are my sunshine." A.V. took the planter inside but left the plaque outside. McNichols came back a few days later, saw the plaque, broke it in half and took it with him. He returned the plaque a few days later and had written on the back of it, "You really was (IS) is my

sunshine. That made me feel so warm inside and out. My heart used to be 1. Now cracked just like this. Is no more sunshine. My sunshine left me. Love and care always for AFV [A.V.'s initials]. You are the love of my heart, body, soul."

**{¶11}** A.V. testified that because of McNichols's behavior she carries pepper spray and wasp spray for defense, she suffers from anxiety when she sees a silver vehicle similar to the one McNichols drives, and she suffers from nightmares about three times a week due to McNichols's stalking behavior. A.V. testified that although she does not take medication, "Once all of this is over with, I will be going to seek counseling."

**{¶12}** McNichols testified and admitted that he did not want his relationship with A.V. to be over. He admitted that he put the planter and plaque on A.V.'s front porch when she was not there and that he wrote the message on the plaque because she had broken his heart. McNichols testified that he circled around A.V. three times – not four – when she was getting gasoline.  McNichols admitted that A.V. asked him to leave her alone at least five times before she filed her CPO petition.

**{¶13}**   The trial court granted A.V. a civil stalking protection order for a period ending June 29, 2019. McNichols appealed.

## II. ASSIGNMENT OF ERROR

McNichols assigns the following error for our review:

I.      THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT ISSUED A CPO AGAINST RESPONDENT

## III. LAW AND ANALYSIS

### A. Standard of Review

{¶14} Because the decision on whether to grant a civil protection order is within the trial court's sound discretion, we will not reverse it absent an abuse of that discretion. *McKinley v. Kuhn*, 4th Dist. Hocking No. 10CA5, 2011-Ohio-134, ¶ 12-13; *Smith v. Wunsch,* 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 10 (4th Dist.). "The term 'abuse of discretion' * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶15} Moreover, an "appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court findings." *State ex rel. Celebrezze v. Environmental Enterprises, Inc.*, 53 Ohio St.3d 147, 154, 559 N.E.2d 1335 (1990). When an appellate court reviews a trial court's judgment, it must generally defer to the fact-finder's weight of the evidence and credibility determinations. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984). As the Court explained in *Seasons Coal:*

> A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal.

*Id.* The trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it. *McKinley v. Kuhn* at ¶ 13.

### B.   Knowingly Cause Mental Distress

{¶16} McNichols argues that the trial court abused its discretion in finding that he acted "knowingly" and in finding that A.V. suffered "actual" mental distress. He does not deny that he behaved the way A.V. described, but rather claims that a reasonable person would not have suffered mental distress from his behavior.

{¶17} A petitioner must demonstrate by a preponderance of the evidence that the respondent has engaged in menacing by stalking in violation of R.C. 2903.211. *Strausser v. White,* 8th Dist. Cuyahoga No. 92091, 2009-Ohio-3597, ¶ 30; *Caban v. Ransome,* 7th Dist. Mahoning No. 08MA36, 2009-Ohio-1034, ¶ 7. The menacing by stalking statute, R.C. 2903.211(A)(1), provides: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

{¶18} The term "knowingly" is defined in R.C. 2901.22(B):

A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶19} Thus, a petitioner seeking a civil stalking protection order under R.C. 2903.211 is not required to prove either purpose or intent to cause physical harm or mental distress. It is enough that the alleged offender knowingly preformed an act that resulted in causing the victim mental distress. *See Caban v. Ransom* at ¶ 21-24. In other words, the offender's subjective intent is not relevant under R.C. 2903.211. Instead the issue is whether the offender acts when he is aware that his conduct will probably cause mental distress, regardless of whether it was his purpose to cause that result.

**{¶20}** Here the record contains sufficient evidence that McNichols acted knowingly when he performed acts that were mentally distressing to A.V.. He witnessed her tearful breakdowns when he taunted her about sexual abuse and rape; he knew she had repeatedly asked him to leave and stay away; he purposely left a planter and plaque on her porch while she was away and then broke the plaque and left an emotional note; and he refused to leave her home and told her he was going to sleep in her driveway.

**{¶21}** McNichols's contention that his verbal abuse is protected by the First Amendment is meritless and was properly rejected by the trial court. *State v. Benner*, 96 Ohio App.3d 327, 329–30, 644 N.E.2d 1130, 1132 (1st Dist.1994) (It is not "within the protection of the First Amendment's guarantee of free speech to knowingly cause another to believe one will cause physical harm or mental distress to him or her by engaging in two or more actions or incidents closely related in time"). Additionally, aside from a superficial assertion, he provides no further analysis on this issue. Accordingly, we will not address this argument further. See App.R. 16; App.R. 12(A)(2); *Wallace v. Masten,* 4th Dist. Hocking No. 02CA13, 2003-Ohio-1081, ¶ 35.

**{¶22}** McNichols also contends that there was no credible evidence in the record that A.V. actually suffered mental distress because she did not seek professional care for her distress. Mental distress is defined in R.C. 2903.211(D)(2)(a) as any "mental illness or condition that involves some temporary substantial incapacity." Incapacity is substantial if it has a significant impact upon the victim's daily life, such as causing a change in one's routine. *Smith v. Wunsch,* 162 Ohio App.3d 21, 2005-Ohio-3498, ¶ 20 (4th Dist.). However, "Mental distress need not be incapacitating or debilitating."

*McKinley v. Kuhn* at 17. "[A] trial court may rely on its knowledge and experience in determining whether the petitioner suffered mental distress." *Id.*

**{¶23}** The trial judge witnessed A.V.'s and McNichols's character and demeanor and assessed their credibility at the hearing. As the trier of fact, the trial court was free to draw its own conclusions about credibility and to disbelieve all, part, or none of their testimony. We typically defer to trial courts on issues of weight and credibility because the trial court observed demeanor, gestures and voice inflections and uses those in weighing testimony. *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 21 (4th Dist.).

**{¶24}** The record allows a rational decision maker to find that A.V. suffered mental distress. A.V. testified that she suffered from anxiety and nightmares and carried pepper spray and wasp spray because she was fearful of McNichols. She has relocated and does not want McNichols to know where she lives. She testified that she did not want to state her address for the record because she did not want McNichols to learn where she was living. She testified that McNichols was constantly mentally abusive towards her, causing her to breakdown in tears. She suffered from anxiety when she saw a silver car because McNichols's car was silver and he was frequently driving around trying to find and follow her. She had nightmares three times a week because McNichols was stalking her. Testimony that a respondent's conduct caused the person considerable fear can support a finding of mental distress. *McNaughton v. Cochenour*, 4th Dist. Ross No. 15CA3479, 2015-Ohio-4648, ¶ 30, citing *Middletown v. Jones*, 167 Ohio App.3d 679, 683, 2006-Ohio-3465, 856 N.E.2d 1003, 1006, ¶ 8 (12th Dist.) (testimony that petitioner felt "nervous," "frightened," "upset," "worried," and "scared"

was sufficient to support a finding of mental distress). We find no abuse of discretion in the trial court's finding that McNichols knowingly caused A.V. to suffer mental distress as a result of his persistent conduct, which exceeded the level of a mere annoyance and became threatening or alarming to its recipient.

### C. The Civil Stalking Protection Order Statutes Do Not Require the Parties to be "Family or Household Members" or "Living as a Spouse"

**{¶25}** McNichols argues that "living as a spouse" is an element of R.C. 2903.214. He is wrong. A.V. sought a civil stalking protection order. The two relevant statutory provisions are R.C. 2903.214 (Protection orders and electronic monitoring; persons who may seek relief; ex parte) and R.C. 2903.211 (menacing by stalking). R.C. 2903.214 allows a person to file a CPO petition with the court containing an allegation that the respondent is engaged in menacing by stalking under R.C. 2903.211:

> (C) **A person may seek relief under this section for the person**, or any parent or adult household member may seek relief under this section on behalf of any other family or household member, **by filing a petition with the court. The petition shall contain or state all of the following:**
>
> (1) **An allegation that the respondent is eighteen years of age or older and engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order** or committed a sexually oriented offense against the person to be protected by the protection order, including a description of the nature and extent of the violation;
>
> (2) If the petitioner seeks relief in the form of electronic monitoring of the respondent, an allegation that at any time preceding the filing of the petition the respondent engaged in conduct that would cause a reasonable person to believe that the health, welfare, or safety of the person to be protected was at risk, a description of the nature and extent of that conduct, and an allegation that the respondent presents a continuing danger to the person to be protected;
>
> (3) **A request for relief under this section**. (Emphasis added.)

**{¶26}** R.C. 2903.211 provides:

(A)(1) **No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person** or a family or household member of the other person **or cause mental distress to the other person** or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs. (Emphasis added.)

{¶27} While both statutory provisions allow a family or household member to seek a CPO on behalf of another family or household member, there is no requirement that the petitioner and respondent be "family or household members" or "living as a spouse." McNichols raised this flawed argument at the evidentiary hearing, insisting that A.V. had to prove that she and McNichols were "family or household members." The trial court properly rejected it and correctly explained that the relevant statutes do not require such a showing.  McNichols raised it again after the hearing and argued that the CPO must be vacated on the ground that A.V. did not show they were "living as a spouse."  Again, the trial court properly rejected it.

{¶28} A.V. was not required to show that she and McNichols were "family or household members" or "living as a spouse."

{¶29} We find no abuse of discretion in the trial court's decision granting A.V.'s petition for a civil stalking protection order against McNichols.

IV. CONCLUSION

{¶30} We overrule McNichols's assignment of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and McFarland, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**